David **HOOPER**

v.

Lt. Dwight **GUTHRIE** et al.

Civ. A. No. 72–673.

United States District Court,
W. D. Pennsylvania.

March 13, 1975.

Samuel J. Pasquarelli, Pittsburgh, Pa., for plaintiff.

Cosmos J. Reale, Pittsburgh, Pa., for defendants.

## OPINION

SCALERA, District Judge.

This civil rights complaint comes before the court on defendants' motion for summary judgment.

Plaintiff avers in his *pro se* complaint that on August 19, 1970 at approximately 1:00 a. m., he and two friends, Robert Hooper, a cousin, and James McDermott, were at his home, the White Oak Apartments, Ross Township, Allegheny County, Pennsylvania. He left his apartment to drive his car from a parking area to the front of the apartment building. As he was driving in the parking area, his vehicle was stopped by the defendants. He was arrested, handcuffed, and placed in the police car. Plaintiff avers that he saw his two companions handcuffed and being led by other police officers and the superintendent of the White Oak Apartments, Langis, from the front door of the building toward the police cars.

Defendants aver that they had gone to the White Oak Apartments to serve an arrest warrant on Theresa Arrigo, alleged to be a tenant of Apartment 402, and to investigate a complaint filed by Langis about a disturbance. Defendants state that they arrived at Apartment 402 while a disturbance was in progress and were refused entry into the apartment. The officers gained entry into the apartment by Langis' pass key. Upon entry, defendants encountered McDermott and Robert Hooper. Plaintiff had fled from the apartment by a porch door which faces the parking area and attempted to escape in his car. Plaintiff was apprehended when the squad car blocked his path.

It is undisputed that incident to plaintiff's arrest, defendants searched plaintiff's car and his apartment. After plaintiff was taken to the police station, he was incarcerated, and, following a po-

lice investigation, charges of passing worthless checks and false pretenses were lodged against him. Plaintiff has never been prosecuted for any offense growing out of the disturbance at the White Oak Apartments which immediately preceded his arrest.

On November 10, 1970, plaintiff filed a motion to suppress evidence in the Court of Common Pleas of Allegheny County [1] and sent copies to the district attorney and to plaintiff's counsel, the public defender. The motion sought the suppression of blank checks and check identification cards of a person named Beere, and other evidence seized by the defendants during the August 19, 1970 search of plaintiff's automobile. On February 9, 1971, when plaintiff's case was called for trial, plaintiff's motion to suppress was mistakenly returned to the record room of the Allegheny County Court of Common Pleas in the erroneous belief that the trial had been continued. In fact, the trial had not been postponed and the trial commenced that day. Apparently, neither the public defender, the district attorney, nor the presiding judge were aware of plaintiff's suppression motion. On the following day, February 9, 1971, the jury returned a guilty verdict and plaintiff was sentenced to a term of imprisonment of 7½ to 15 years.

On March 23, 1971, after plaintiff had obtained new counsel, a motion was filed requesting leave to file a motion for a new trial out of time. The basis of the motion was that plaintiff's *pro se* motion to suppress evidence had been overlooked by the court and the attorneys.

On April 30, 1971, a hearing was held on the motion for a new trial and the issue was taken under advisement. The state court reversed plaintiff's conviction for the worthless check and false pretenses offenses and granted a new trial for the reason the plaintiff's motion to suppress evidence had been overlooked. On February 11, 1972, plaintiff pleaded guilty to the worthless check and false pretenses charges and was sentenced to a 1 to 2-year term on each of the counts, the sentences to run concurrently.

Plaintiff's complaint in the case *sub judice*, accompanied by a motion to proceed in forma pauperis, was received by this court on June 21, 1972 and was ordered filed with the clerk on August 15, 1972, when plaintiff's motion to proceed in forma pauperis was granted.

Plaintiff avers that his action arises under the Fourteenth Amendment of the United States Constitution, the Civil Rights Act of 1871, specifically 42 U.S.C. §§ 1983, 1985, and the laws of the United States of America.[2]

Mindful that allegations of a *pro se* complaint are to be held to less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we construe the plaintiff's complaint to state three separate causes of action: (1) false arrest accompanied by a false imprisonment; (2) unlawful search of plaintiff's car and apartment; and (3) an unlawful state conviction. For these civil rights violations, plaintiff seeks $250,000 from the defendants.

By early October, 1972, the plaintiff had retained a lawyer to represent him.[3]

1. This court has examined the state court records and the transcript of proceedings of February 11, 1972 when Hooper entered a guilty plea.

2. While plaintiff merely states that his civil rights complaint is in part based on 42 U.S. C. §§ 1983, 1985, we note that while § 1983 and § 1985 are appropriate sources of explicit statutory relief, they are not jurisdictional. 28 U.S.C. § 1343(1) and (3) provide the coordinate jurisdictional implementation for the above sections of the Civil Rights

Act, Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970), and we assume that plaintiff in his *pro se* complaint attempted to invoke them.

Plaintiff also avers that his civil claim arises under 18 U.S.C. § 371. It is apparent that this section of Title 18 cannot be the basis of jurisdiction in this civil proceeding.

3. The plaintiff was killed in an automobile accident in the State of California on October 30, 1972. There has been no motion pursuant to Rule 25, Federal Rules of Civil

Counsel filed pretrial narratives pursuant to this court's Local Rule 5. In the pretrial narrative filed by plaintiff, the only legal theory advanced is that of a cause of action for damages because of an unlawful arrest, unlawful detention, and false imprisonment. There is no suggestion that plaintiff continues to pursue his second and third causes of action, those based on an unlawful search and unlawful conviction.

At a pretrial conference, defendants moved for summary judgment on the following grounds: (1) the statute of limitations bars plaintiff's claim; (2) the plaintiff is collaterally estopped from raising these claims by virtue of his guilty plea in the state courts; (3) the plaintiff's claim was extinguished by his death; and (4) the complaint fails to state a cause of action upon which relief may be granted. Both parties have filed briefs.

## I

■ The Civil Rights Act of 1871, 42 U.S.C. § 1983 et seq., contains no statute of limitation. The limitation to be applied is that which would be applicable in the courts of the state in which the federal court is sitting had the action been brought in the state. The court in Ammlung v. City of Chester, et al., 494 F.2d 811 (3d Cir. 1974) said:

"Since there is no federal statute of limitations with respect to civil rights actions arising under 42 U.S.C.A. § 1983, the court below properly held that the Pennsylvania statute of limitations for analogous actions should be applied. O'Sullivan v. Felix, 1914, 233 U.S. 318, 34 S.Ct. 596, 58 L.Ed. 980; Hileman v. Knable, 3 Cir. 1968, 391 F.2d 596; Henig v. Odorioso, 3 Cir. 1967, 385 F.2d 491, cert. denied, 390 U.S. 1016, 88 S.Ct. 1269, 20 L.Ed. 2d 166, rehearing denied 1968, 391 U. S. 929, 88 S.Ct. 1814, 20 L.Ed.2d 671; Hughes v. Smith, D.N.J.1967, 264 F. Supp. 767, aff'd 3 Cir. 1968, 389 F.2d 42. The limitation period to be applied is that which the state would apply if the action had been brought in a court of that state. Funk v. Cable, M.D.Pa.1966, 251 F.Supp. 598, 599. There being no Pennsylvania statute of limitations of general applicability to actions involving invasions of constitutional rights, the applicable statute of limitations must be determined from the nature of the conduct alleged. Conard v. Stitzel, E.D.Pa.1963, 225 F. Supp. 244, 247."

■ With respect to plaintiff's first cause of action, that based on false arrest and false imprisonment, the applicable Pennsylvania statute of limitations is 12 P.S. § 51 (Act of 1935, P.L. 503, § 1),[4] which covers false arrest, slander, malicious prosecution and certain actions for false imprisonment, and which requires that such actions be brought within one year.

The Supreme Court of Pennsylvania in Gagliardi v. Lynn, 446 P. 144, 285 A. 2d 109 (1971) has held that 12 P.S. § 51 governs false imprisonment causes of action where a false arrest precedes or is inextricably intertwined with the imprisonment.[5] In accord, Henig v.

---

Procedure for substitution of the proper party, nor has the court been advised of the identity of the administrator of plaintiff's estate.

4. Pa.Stat.Ann. tit. 12, § 51: "Every suit to recover damages for malicious prosecution or false arrest . . . must be brought within one year from the date of the accruing of such right of action and not thereafter: . . . ."

5. The court in *Gagliardi,* supra, explains that there was no tort of false arrest in Pennsylvania; rather the action was actually one

for false imprisonment. In determining which actions (for false imprisonment) come within the one-year statute of 12 P.S. § 51 governing "false arrest" cases, the court referred to the discussion in Rhoads et al. v. Reading Company, 83 Pa.Dist. & Co.R. 168 (Phila. County, 1953):

"It appears to us that to sustain the broad proposition that no action for false imprisonment falls within this statute would be to erase the words 'false arrest' from the act. Every arrest without a warrant involves a confinement which, if not privileged, constitutes a false impris-

Odorioso, supra, 385 F.2d at 493, n. 5; Hileman v. Knable, supra, 391 F.2d at 597; Hughes v. Swinehart, 376 F.Supp. 650, 652 (E.D.Pa.1974).

■■ The statute of limitation commences to run when the cause of action arises. The cause arises when the final significant event occurs, which event is necessary to make the claim suable. Mack Trucks, Inc. v. Bendix-Westinghouse Auto A. B. Co., 372 F.2d 18 (3d Cir. 1966); Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517 (1949). In this case, the statute of limitation began to run on August 19, 1970—the day plaintiff was arrested and then incarcerated.[6] Because 12 P.S. § 51—the applicable statute of limitation for a claim of false arrest coupled with one for false imprisonment—has a one-year period of limitation, plaintiff had until August 20, 1971 to file his complaint. Plaintiff's complaint was not received by this court until approximately ten months after the one-year period had elapsed, that is, June 21, 1972. Defendants' motion for summary judgment as to the false arrest/false imprisonment claim should be granted.

■ It is plaintiff's contention that the claim for false imprisonment is governed not by the one-year statute of limitation in 12 P.S. § 51, but rather by the two-year statute of limitation provided in 12 P.S. § 31 (Act of 1713, 1 Sm.L. 76, § 1).[7] Plaintiff cites Funk v. Cable, 251 F.Supp. 598 (M.D.Pa.1966), for the argument that in a civil rights action where a cause of action (apparently the false arrest claim) governed by the one-year period provided in 12 P.S. § 51 is joined with a cause of action (presumably the false imprisonment claim) governed by the two-year statute of limitation provided in 12 P.S. § 31,[8] a motion

onment. Hence, 'False arrest' in the act must include some actions for false imprisonment. This strong indication of a legislative intent to include actions of false imprisonment to some extent is confirmed by an analysis of 'false arrest'.

"Strictly speaking, 'false arrest' is not itself a tort in the sense of being an independent source of liability. See Harper, Malicious Prosecution, False Imprisonment and Defamation, 15 Tex.L.Rev. 157, 161–162, 171 (1937). 'An arrest is the taking of another into the custody of the actor for the actual or purported purpose of bringing the other before a court, or of otherwise securing the administration of the law': A.L.I. Restatement of the Law of Torts, Sec. 112. Privilege shields this conduct from liability if it is authorized by law. But if it is not so authorized, it usually involves assault and battery and false imprisonment, or both, and on these grounds gives rise to liability. See A.L.I., Restatement of the Law of Torts, Sec. 118, com. (b). Hence, one who confines another, while purporting to act by authority of law which does not in fact exist, makes a false arrest and must respond in damages for whatever civil wrongs he commits. The actions to redress these wrongs is familiarly known as an action for false arrest and is what the legislature must have meant by the use of the term. Therefore, we conclude that in cases where defendant purports to act for the purpose of securing the administration of law without actual legal justification, 'false arrest' is synonymous with false imprisonment and the Act of 1935 applies. [12 P.S. § 51] We need not, and do not, decide the impact of the statute on actions for false imprisonment arising from other circumstances."

6. Although the point was not raised, the applicable statute of limitations is not tolled because plaintiff was incarcerated. Hileman v. Knable, 266 F.Supp. 317 (M.D.Pa.1967) [applying 12 P.S. § 51]; Jones v. Bombeck, 375 F.2d 737 (3d Cir. 1967); Walker v. Mummert, 394 Pa. 146, 146 A.2d 289 (1958).

7. Pa.Stat.Ann. tit. 12, § 31 in pertinent part provides: ". . . [A]nd the said actions of trespass, of assault, . . . imprisonment, or any of them, . . . within two years next after the cause of such actions or suit, and not after; . . . .."

8. In his brief filed in opposition to the motion for summary judgment, plaintiff merely contends that excepting false arrest and malicious prosecution, all other actions in tort would be governed by 12 P.S. § 31. This contention is misguided. First of all, it was long ago held in Jones-Burget v. Borough of Dormont, 14 F.2d 954 (3d Cir. 1926), that individual claims for false imprisonment are governed by the two-year statute of limitation provided for in 12 P.S. § 34 (the Act of 1895). Furthermore, the Pennsylvania Supreme Court in *Gagliardi*, supra, cited

for summary judgment based upon the one-year statute should be denied.

Plaintiff's reliance on *Funk* is misplaced. In *Funk,* plaintiff filed a civil rights action based upon 42 U.S.C. § 1983 twenty-three months after the statute of limitation began to run. Funk argued that his complaint supported causes of actions based on false arrest, malicious prosecution, abuse of legal process, false imprisonment, assault and battery, and invasion of privacy. The issue before the court on defendant's motion to dismiss was whether Funk's complaint had stated a cause of action governed by a two-year statute of limitation. The *Funk* court ruled that the plaintiff had stated a cause of action for abuse of process, which tort under Pennsylvania law would be governed by "no less than a two-year period of limitation." 251 F.Supp. at 600. As for the plaintiff's contention that the complaint also stated a cause of action for false imprisonment, the court in *Funk,* although finding it unnecessary to consider the issue, stated that if the facts supported a cause of action for false imprisonment, the one-year statute (12 P. S. § 51) would apply. Actually, the dictum in *Funk* lends support to the conclusion that in the case *sub judice,* the false imprisonment claim, coupled as it is with the false arrest cause of action, is governed by the one-year period of limitation provided for in 12 P.S. § 51.

## II

### a.

■ Plaintiff did not in the statement of facts in his pretrial narrative refer to the unlawful conviction of February 10, 1971 and the unlawful search of the car and the apartment as causes of action. The pretrial narrative specified false arrest and false imprisonment as the basis for plaintiff's claim. The

brief filed by plaintiff in opposition to the motion for summary judgment did not refer to the two claims of unlawful search and unlawful conviction.

The conclusion to be drawn from this course of conduct is that plaintiff has dropped these causes of action from this lawsuit. Local Rule 5 p. II(C)(2) provides in pertinent part: "Within 60 days after pretrial has been invoked, counsel for plaintiff shall serve a narrative written statement of the facts that will be offered . . . at trial upon all counsel of record and file a copy with the Clerk of Court." Were this court to consider the two omitted causes of action, we would ignore Local Rule 5 pt. II(G) which provides in pertinent part: "Failure to fully disclose in the pretrial narrative statement or at the pretrial conference the substance of the evidence as to liability . . . proposed to be offered at trial, will result in exclusion of that evidence . . . [t]he only exceptions will be (1) matters which the court determines were not discoverable at the time of the pretrial conference, (2) privileged matter, and (3) matter to be used solely for impeaching purposes."

Local Rule 5 pt. II(J) provides further in pertinent part: "After a case has been pretried, no amendment to any pretrial statement or other pleadings shall be presented to the Clerk for filing unless authorized at the pretrial conference." We have been urged by the Circuit Court of Appeals to uphold the integrity of our pretrial procedure. Shuber v. S. S. Kresge Co., 458 F.2d 1058 (3d Cir. 1972).

■ The intent and purpose of these local rules and Rule 16, Federal Rules of Civil Procedure, would be frustrated by having this court consider legal theories which were not raised in the pretrial procedure. And whether to consider a legal theory not disclosed during pretrial

---

*Jones-Burget,* supra, and noted that while 12 P.S. § 31 mentions "imprisonment" as one of the actions to be governed by its two-year period of limitation, 12 P.S. § 34 governs individual false arrest claims. Whether 12 P.S. § 31 or 12 P.S. § 34 governs an in-

dividual false imprisonment claim is, as a practical matter, irrelevant in the case *sub judice* because *Gagliardi* dictates that where, as herein, the false imprisonment cause of action is inextricably coupled with a false arrest claim, 12 P.S. § 51 controls.

is a matter peculiarly within the discretion of the district court judge, Ely v. Reading Co., 424 F.2d 758 (3d Cir. 1970); Moore v. Sylvania Electric Products, Inc., 454 F.2d 81 (3d Cir. 1972).

Under these circumstances, it is apparent that the two causes of action are no longer presented by counsel as a basis for defendants' liability. We conclude that these claims are not appropriate for our consideration.

b.

The application of the doctrine of collateral estoppel also precludes this court from considering the merits of the two causes of action—the unlawful search and unlawful conviction. Plaintiff does not claim that his guilty plea entered on February 11, 1972 was involuntary or unknowing. Plaintiff claims the unlawful search and the state conviction of February 9, 1971 as the basis of his causes of action. When the state conviction was overturned and a new trial granted, any constitutional violation would appear to have been redeemed.

The concept of collateral estoppel (or issue preclusion) has been developed generally in the context of sequential civil cases where it has been employed to preclude the relitigation of issues actually decided in former judicial proceedings. Collateral estoppel has also been recognized in civil litigation following a prior criminal proceeding by the United States Supreme Court. For example, in Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951), an anti-trust proceeding, the court stated that the standard to determine if litigation of a question in a civil suit is barred by a prior criminal proceeding is whether the question was " 'distinctly put in issue and directly determined' in the criminal prosecution. * * * In the case of a

criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment."

In Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970), the plaintiff had been convicted by a jury of conspiracy to commit burglary, burglary and larceny in a Pennsylvania state court. He then filed a *pro se* suit for damages under 42 U.S.C. §§ 1983, 1985 against the district attorney and three police officers of Montgomery County, Pennsylvania, alleging that they had conspired to secure his conviction by the knowing use of perjured testimony. The district court dismissed the action on defendant's Rule 12(b) motion principally on the ground that plaintiff was collaterally estopped from bringing the civil rights action because the issue of the veracity of witnesses had been decided against the plaintiff in the criminal trial. The Court of Appeals reversed because the district did not examine the state records and therefore did not know whether the veracity of the state's witnesses had been put in issue.

The import of *Moss* to the case *sub judice* is that the appellate court (1) acknowledged the applicability of collateral estoppel to a civil rights suit, (2) stated that the utilization of collateral estoppel is appropriate on a motion for summary judgment when the state criminal records are examined.

Similarly, the Court of Appeals, in Basista v. Weir, 340 F.2d 74 (3d Cir. 1965), considered the issue of collateral estoppel in a civil rights suit following the plaintiff's state criminal conviction, recognized the application of the doctrine, but concluded that collateral estoppel was inappropriate because the record before the district judge was incomplete.[9]

---

9. In *Basista,* the court stated: ". . . the transcript of the proceedings of Basista's trial before the Court of Quarter Sessions was not admitted into evidence and therefore there could be no collateral estoppel. Lacking a . . . copy of the transcript we are uninformed as to what acts of Basista furnished the foundation for his conviction . . . ." 340 F.2d at 81, 82.

In this case, the court has been provided by the defendants with a transcript of the proceedings in the state court when plaintiff pled guilty to the worthless check charges. All the state records have also been examined by the court. In Scooper-Dooper, Inc. v. Kraftco Corp., 494 F.2d 840, 844 (3d Cir. 1974), it was noted that "three requirements must be satisfied before collateral estoppel may be utilized:

(a) The issue decided in the prior litigation must be identical with the issue presented in the action in question;

(b) The prior litigation must have resulted in a final judgment on the merits; and

(c) The party against whom the estoppel is asserted must have been a party, or in privity with a party, to the prior adjudication." [10]

It is apparent that the state proceeding resulted in a final judgment and that plaintiff, as the defendant in the state proceeding, was, of course, a party to the adjudication. A question remains only as to the first requirement.

As has been noted, plaintiff's cause of action based on the February, 1971, jury conviction was mooted by the reversal of that conviction and the granting of a new trial. Plaintiff then had an opportunity to raise a complaint about the unlawful search. Plaintiff, probably motivated by the prospect of a lighter sentence, pled guilty, thus foregoing the opportunity of having the issue of the search determined. What became of the unlawful search issue when plaintiff entered his guilty plea? Or to put it another way, can it be said that by the entry of the plea, the issue of the validity of the search was necessarily adjudicated?

It is said that "the generally accepted rule is that a judgment of conviction, based on a plea of guilty, is conclusive in a civil suit between the same parties of all issues that would have been determined by a conviction after a contested trial." 1B Moore, Federal Practice (1974) ¶ 0.418[1], p. 2706. Accord, Brazzell v. Adams, 493 F.2d 489, 490 (5th Cir. 1974); Metros v. United States District Court, 441 F.2d 313, 317–319 (10th Cir. 1970); United States v. Accardo, 113 F.Supp. 783, 786 (D.N.J., aff'd. 208 F.2d 632 (3d Cir. 1953), cert. denied 347 U.S. 952, 74 S.Ct. 677, 98 L.Ed. 1098 (1954); Bradford v. Lefkowitz, 240 F.Supp. 969 (S.D.N.Y. 1965); United States v. Schneider, 139 F.Supp. 826 (S.D.N.Y.1955); United States v. Ben Grunstein & Sons Co., 127 F.Supp. 907 (D.N.J.1955).

In Brazzell v. Adams, supra, the court held that plaintiff, a state prisoner, was collaterally estopped from seeking monetary damages under 42 U.S.C. § 1983 against the district attorney and against the state agents who participated in plaintiff's arrest for selling heroin by virtue of plaintiff's guilty plea to that charge. In *Brazzell*, plaintiff asserted that he did not "sell" heroin within the contemplation of the state statute because his civil rights had been violated by the state agents' conduct which was "akin to entrapment." The court concluded that the general rule that collateral estoppel applies equally whether the defendant was convicted on a jury verdict or a guilty plea should be followed since plaintiff's guilty plea necessarily admitted all elements of the crime, thereby precluding him from arguing that he did not "sell" the heroin.

In Metros v. United States District Court, supra, the plaintiff pled guilty to

10. In *Scooper-Dooper*, the court noted that although classical estoppel doctrine added a fourth element, a requirement of mutuality, this was unnecessary: "Provided that the party against whom the plea is asserted has had a full and fair opportunity to present his claim in the prior litigation, collateral estoppel is available as a defense in this Circuit regardless of whether or not the party asserting the plea was a party (or privy) to the prior litigation. See Bruszewski v. United States, 181 F.2d 419 (3d Cir.) cert. denied 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); Township of Hopewell v. Volpe, 446 F.2d 167, 171 (3d Cir. 1971)." 494 F.2d at 844.

a charge of unlawful possession of heroin. His civil rights action alleged that the search warrant was constitutionally defective. The court in *Metros* held that issue preclusion (or collateral estoppel) prevented the relitigation in the civil rights action of the validity of the search warrant issued by the state court. *Metros* noted that the defendant, in the prior criminal proceeding, must have realized the significance of the search warrant's validity when he chose to plead:

> "It is obvious that the use at trial of objects seized at a search have a significant bearing on the course of the trial which may follow. Thus the availability of the challenges to the search is always important, and was a very important factor in any consideration of the defense of the plaintiff here to the criminal charge to which he entered a plea of guilty." 441 F.2d at 315–316.

█ The facts in the case *sub judice* closely track those of *Metros*. In this context, the *Metros* court cited the generally accepted rule that a guilty plea, intelligently and voluntarily entered, waives all non-jurisdictional defects and defenses and stands as a conclusive admission that all the charges in the indictment are true. United States v. Ptomey, 366 F.2d 759 (3d Cir. 1966); Woodward v. United States, 426 F.2d 959 (3d Cir. 1970); United States ex rel. Johnson v. Russell, 444 F.2d 1177 (3d Cir.), cert. denied Johnson v. Brierley, 405 U.S. 977, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1973); and United States v. Morin, 163 F.Supp. 941, 944 (W.D.Pa. 1958), aff'd. 265 F.2d 241 (3d Cir. 1959). Since the claimed illegal search is a non-jurisdictional, constitutional infirmity, Hooper's voluntary guilty plea would waive such a defense.

█ Having been given the opportunity to contest the search in a new trial, and having bypassed that opportunity by entry of a plea, the cause of action based on the search is precluded by the principles of collateral estoppel.

Defendants' motion for summary judgment should be granted. Because of our disposition of these issues, we need not consider the third and fourth defenses raised by defendants in their motion for summary judgment.