**Jay C. SMITH, Plaintiff,**

v.

**John J. HOLTZ, et al., Defendants.**

**No. 4:CV–93–1428.**

United States District Court,
M.D. Pennsylvania.

June 27, 1994.

Leslie M. Fields, Lemoyne, PA, Gerald J. Williams, Williams & Cuker, Philadelphia, PA, for plaintiff.

Calvin R. Koons, Gregory R. Neuhauser, Atty. General's Office, Litigation Section, Harrisburg, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Jay C. Smith filed this section 1983 action [1] alleging the violation of his civil rights by defendants in connection with his murder conviction. In April, 1986, plaintiff was convicted of murdering Philadelphia school teacher Susan Reinert and her two children, and was sentenced to death.[2]

Plaintiff remained on death row until September 18, 1992 when his discharge was ordered by the Pennsylvania Supreme Court.[3] The state Supreme Court held that, due to the prosecutorial misconduct which led to plaintiff's conviction, the law required that Smith be discharged, because a retrial would violate his right against double jeopardy under the Pennsylvania Constitution.

Plaintiff brings this action against the state investigators responsible for reviewing and preserving the evidence against him. He alleges that defendants knowingly and deliberately concealed from plaintiff and his attorney, William Costopoulos, Esq., exculpatory evidence which would have bolstered Smith's theory of the case.

Plaintiff names as defendants: John J. Holtz and Ronald F. Colyer, both of the Bureau of Technical Services of the Pennsylvania State Police; Victor Dove, John J. Purcell and William J. Lander of the Central Regional Office of the Bureau of Criminal Investigation of the Office of the Pennsylvania Attorney General; and Paul Yatron, Executive Director of the Attorney General's office in Harrisburg, Pennsylvania. (Plaintiff's complaint, ¶¶ 10–16)

It was Smith's contention at the trial that Reinert and her children were murdered at the New Jersey shore by William Bradfield and/or his associates who then conspired to "frame" Smith for the murders. Bradfield had previously been convicted of the murder of Reinert and her children.

At trial, Smith's counsel cross-examined the prosecution's witness on the existence of physical evidence found during the autopsy of Reinert's body, which evidence supported the defense theory that the murders had taken place at the shore. During cross-examination, prosecution witness John C. Balshy, a former state policeman who had been present during the autopsy, testified that he observed a grainy substance between Reinert's toes, which substance appeared to be sand. Balshy testified that he had preserved this evidence by pressing it onto rubber "lifters." (Plaintiff's complaint, ¶¶ 20–21). The "lifters" were not produced at trial, and their actual existence was never disclosed by the prosecution during, or at any time prior to, the trial. Smith states that his counsel learned of their existence through independent means in 1988. (Plaintiff's complaint, ¶ 31).

Plaintiff alleges a series of acts by the various defendants intended to conceal the existence of the lifters from plaintiff and his counsel in violation of his right to exculpatory evidence established by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and in violation of the Rules of Professional Conduct, Rule 3.8. (Plaintiff's complaint, ¶ 38). Plaintiff alleges that the defendants and the prosecution knew of the significance of this evidence to his defense but willfully concealed it with the effect of denying him a fair trial. (Plaintiff's complaint, ¶¶ 23–29 and 34–35).

Plaintiff alleges that defendants acted out of a desire to: 1) "avoid public embarrassment of the state police and the office of the attorney general because of the conduct of their investigation;" 2) "avoid confirmation of plaintiff's allegations of prosecutorial misconduct in his post-conviction petitions; and to 'cover up' a persistent, consistent pattern of misconduct and incompetence throughout the

---

1. 42 U.S.C. § 1983.

2. *Commonwealth v. Pennsylvania v. Jay C. Smith,* Crim. Nos. 1677, 1677(A) and 1677(B) (Dauphin Co.). On direct appeal, Smith's conviction was reversed and his case remanded for a new trial on evidentiary grounds, 523 Pa. 577, 568 A.2d 600 (1987).

3. *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992), reversing *Commonwealth v. Smith,* 404 Pa.Super. 553, 591 A.2d 730 (1991).

investigation of the Reinert murders;" and 3) on the part of defendant Holtz, to receive compensation for his story on the investigation. (Plaintiff's complaint, ¶ 36).

Plaintiff asserts a cause of action under section 1983 based on alleged violations of his Fifth, Sixth and Fourteenth Amendment rights. He alleges that he has been deprived of the right to: a) freedom from the deprivation of life, liberty or property without due process of law; b) a fair trial in a criminal prosecution, and the right to be free of malicious prosecution; and c) the right to equal protection of the laws. (Plaintiff's complaint, ¶ 40). As redress for these alleged violations, plaintiff seeks compensatory and punitive damages and attorney's fees pursuant to section 1988.

Defendants moved for partial summary judgment[4] on plaintiff's due process and equal protection claims on the ground that there are no material facts in dispute on those claims and that defendants are entitled to judgment on them as a matter of law.

Defendants' brief in support of their motion addressed a different issue entirely: their contention that all plaintiff's claims (except that for malicious prosecution) are barred by the two-year statute of limitations applicable to such claims, since plaintiff cannot dispute that he knew of the lifters' existence more than two years prior to filing this action. That is the issue which plaintiff refuted in his opposing brief and will be the issue we address here. We interpret defendants' shift in focus as an abandonment of the original argument stated in their motion.

For the reasons which follow, we find that summary judgment in defendants' favor is appropriate on all claims asserted and will enter an order to that effect.

## DISCUSSION

### Summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323 and 325, 106 S.Ct. at 2552–53 and 2554.

Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693–94 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

---

4. Record document no. 7.

## Statute of limitations

■ Defendants argue that, with the exception of plaintiff's claim for malicious prosecution,[5] all claims asserted are time-barred.[6] Federal courts apply the state personal injury statute of limitations in section 1983 actions, *Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985). Pennsylvania's statute of limitations applies here, and under it, the time limit for filing a section 1983 claim is two years. *Smith v. City of Pittsburgh,* 764 F.2d 188, 194 (3d Cir.1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) and 42 Pa.Cons.Stat.Ann. § 5524. Smith's complaint was filed with this court on September 15, 1993, barring claims which accrued more than two years prior to that date.

■ Although the state statute of limitations applies to section 1983 claims, when the cause of action accrues is a question of federal law. *Albright v. Oliver,* —— U.S. ——, —— n. 6, 114 S.Ct. 807, 813 n. 6, 127 L.Ed.2d 114, 128 n. 6 (1994) (Ginsburg, J. concurring). Under federal law, a section 1983 claim accrues when the plaintiff knows, or has reason to know, of the injury that constitutes the basis of the action. *Deary v. Three Un-*

*Named Police Officers,* 746 F.2d 185, 193 (3d Cir.1984) and *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982) (*per curiam*).

■ In this circuit, a claim for the denial of fair trial based on the conduct of the prosecution accrues on the date of conviction provided the plaintiff knew, or reasonably should have known, of the violation of his rights at that time. *Sandutch, supra,* 684 F.2d at 254.[7] See generally: *Rose v. Bartle,* 871 F.2d 331, 351 (3d Cir.1989) (A section 1983 claim of false arrest accrues on the date of the arrest.) and *Deary v. Three Un-Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir.1984) (same).

If the plaintiff could not have known of the violation on the date of conviction, the cause of action accrues on the date when he discovers, or reasonably should have discovered, the violation. The date when "the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant," triggers the limitations period, even if the plaintiff did not realize that defendant's conduct was tortious or unlawful. *Sowers v. Bradford Area School District,* 694 F.Supp. 125, 136

---

5. See: record document no. 10 at p. 7 and the discussion at pp. 19–21 *infra.*

6. Plaintiff takes issue with defendants' separation of the claims pled into distinct causes of action and argues that only one cause of action has been pled, that claim being for malicious prosecution.

Plaintiff argues, in his opposing brief, that defendants' acts were part of a continuing course of conduct which began in 1985, just days after the conclusion of plaintiff's trial, when state authorities first discovered, and decided to conceal, the lifters, and continued through plaintiff's discharge from state custody in 1992. He argues that defendants' acts must, therefore, be considered and analyzed as a single, continuous wrongful act.

This argument is at odds with the complaint, which plainly asserts no less than four distinct causes of action. Plaintiff alleges claims for the: 1) deprivation of life, liberty or property without due process of law; 2) denial of a fair trial in a criminal prosecution; 3) malicious prosecution; and 4) denial of equal protection of the laws. (Plaintiff's complaint, ¶ 40).

Presented with this curious inconsistency between the claims pled and plaintiff's subsequent interpretation of his own pleading, we will consider all of the claims pled in the complaint. We

decline to adopt defendants' contention that plaintiff's failure to argue the viability of any claim other than one for malicious prosecution constitutes a waiver.

7. Although other circuits, principally the Fifth and Ninth Circuit Courts of Appeal, hold that an action challenging the conduct of the prosecution may be brought at any time during the period of resulting incarceration, (See: *Burge v. Parish of St. Tammany,* 996 F.2d 786 (5th Cir.1993) (Statute of limitations on plaintiff's section 1983 claim for witness tampering and presenting false testimony to the jury deemed analogous to a common-law malicious prosecution claim such that the limitations period did not begin to run until plaintiff's conviction was reversed by the state Supreme Court); *Serio v. Louisiana State Bd. of Pardons,* 821 F.2d 1112, 1117 (5th Cir. 1987); *Venegas v. Wagner,* 704 F.2d 1144, 1146 (9th Cir.1983); *Cline v. Brusett,* 661 F.2d 108, 111–12 (9th Cir.1981); and *Heller v. Plave,* 743 F.Supp. 1553, 1571 (S.D.Fla.1990) (alleged conspiracy to wrongfully convict civil rights plaintiff "continued through two criminal trials based on false testimony," such that the statute of limitations on plaintiff's claim did not begin to run until his convictions were reversed on appeal.)), that is not the view adopted by the courts of this circuit.

(W.D.Pa.1988), citing, *inter alia*, *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (discovery rule applied under Federal Tort Claims Act); *Plain v. Flicker* 645 F.Supp. 898, 901 (D.N.J.1986) (applying *Kubrick* discovery rule to section 1983 claim); and *Hauptmann v. Wilentz*, 570 F.Supp. 351, 396 (D.N.J.1983), *aff'd*, 770 F.2d 1070 (3d Cir.), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986) (also applying *Kubrick* discovery rule to section 1983 claim).

The Third Circuit applied the discovery rule in *Sandutch, supra*, which involved the alleged violation of Sandutch's federal rights based on the state prosecutor's use of a fraudulent incriminating statement obtained from an alleged co-conspirator. *Id.* at 253. The Third Circuit affirmed the district court's dismissal of plaintiff's civil rights claim as time-barred. The co-conspirator's statement was introduced at Sandutch's preliminary hearing. Its falsity came to light before Sandutch's trial commenced, when the alleged co-conspirator recanted and stated that he had been coerced into giving a statement implicating Sandutch.

Sandutch's civil rights action was filed beyond the one and two year statutes of limitations applicable, respectively, to his claims of false imprisonment and false arrest. On appeal, the Third Circuit assumed, without deciding, that Sandutch did not have actual knowledge of his right to bring a federal action against the state prosecutor until 1980. It held, however, that he "had reason to know of the alleged conspiracy to secure false testimony ... when he ... [learned] of ... [the informant's] recantation" four years earlier, in 1976. Citing the fact that Sandutch "attacked ... [the informant's] incriminating statement, at both his 1976 trial and on appeal, as fraudulent and obtained by duress", *Id.* at 254, the court held that "[a]lthough at that time Sandutch may not have known all the facts necessary to establish that the *defendants* conspired to deprive him of his rights, his 1976 knowledge of the alleged falsity of ... [the informant's] statement ... should have led, by the exercise of due diligence, to the awareness that he had a cause of action. The statute began to run then." *Id.*

The discovery rule was also applied by the United States District Court for the Eastern District of Pennsylvania in *Drum v. Nasuti*, 648 F.Supp. 888 (E.D.Pa.1986), *aff'd without published opinion*, 831 F.2d 286 (3d Cir. 1987). Drum filed a section 1983/*Bivens* action alleging the existence of a conspiracy between his attorneys and federal prosecutors in a criminal action. *Id.* at 895. Drum alleged that his attorneys had misrepresented the terms of a plea agreement which he accepted, and that he relied on their misrepresentations in refusing to testify before a grand jury. Drum's refusal to testify caused criminal contempt proceedings to be filed against him.

■ The district court dismissed Drum's claim as time-barred, holding that the cause of action accrued during his trial on criminal contempt charges. Drum knew at that time, the court held, of the alleged conspiracy which formed the basis for his section 1983/Bivens action. The court rejected plaintiff's argument that his claim was not ripe for filing until the conclusion of his direct appeal in the state courts, stating: "[T]he last act which Drum complains of causing his injury would have been during his criminal contempt proceedings ... when he 'knew' from [defendant's] testimony of the conspiracy he claims. It was then that the statute of limitations accrued." *Id.* at 903 (emphasis deleted). The pendency of state court proceedings challenging the validity of the plaintiff's conviction does not toll the statute or defer the start of the limitations period on a federal civil rights claim arising out of the arrest or conviction. The limitations period begins to run despite the pendency of a habeas corpus action in federal court or a direct appeal in state court. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 761 (9th Cir.1991).

To rule otherwise would delay indefinitely the start of the limitations and permit the filing of a section 1983 claim years, or even decades, after the conduct giving rise to it took place. In the case of a habeas petition in particular, there is no time limit. A habeas petition can be filed at any time while the

petitioner is incarcerated or awaiting incarceration.[8] Permitting a section 1983 claimant to cite the pendency or possible pendency of a habeas petition as a ground for deferring his section 1983 action would subject the individuals sued to the possibility of defending claims brought long after critical evidence has been discarded or lost and the memories of key witnesses faded—the very risks which the statute of limitations exists to eliminate. See: *Kubrick, supra,* 444 U.S. at 117, 100 S.Ct. at 356–57 and *Bagley, supra,* 923 F.2d at 762.

The argument for deferral based on the pendency of habeas proceedings or an appeal in state court was considered and rejected by the district court for the Eastern District of Pennsylvania in *Drum, supra.* Drum argued that his direct appeal tolled the federal statute of limitations. The district court disagreed, stating that in such cases, the plaintiff is required to file a section 1983 claim to toll the running of the statute, even though the federal district court will most likely stay the section 1983 action pending final disposition of the underlying state proceedings. *Id.* at 903–04. See, e.g., *Offet v. Solem,* 823 F.2d 1256, 1258 n. 2 and 1261 (8th Cir.1987) (Inmate's section 1983 action for the alleged unconstitutional deprivation of good time credits should be stayed until the inmate has satisfied the exhaustion requirement for habeas petition on the underlying constitutional issue) and *Bailey v. Ness,* 733 F.2d 279, 283 (3d Cir.1984) (When a section 1983 claim is filed challenging a state conviction still on direct appeal in the state court system, the "proper course" is "to stay ... federal court proceedings until the state court proceedings have run their course.")

### Accrual date of Smith's claims

■ Smith alleges multiple claims based on the prosecution's failure to disclose the existence of exculpatory evidence.[9] Although Smith alleges claims for the denial of due process and equal protection, the gravamen of his complaint is the alleged denial of the right to a fair trial due to prosecutorial misconduct.

The parties disagree on when the cause of action on this claim accrued. Defendants argue that undisputed facts establish that plaintiff's defense attorney knew as of February, 1989, at the latest, that the prosecution team had concealed the lifters from Smith and his defense counsel. It is as of that date, defendants argue, that plaintiff's cause of action accrued.

Smith argues that his cause of action did not accrue until the Pennsylvania Supreme Court ordered his discharge. That occurred in September, 1992, bringing his September 15, 1993 filing before this court within the two-year statute of limitations. Plaintiff bases his argument in part on the contention that only one claim, a claim for malicious prosecution, is pled and in part on the contention that defendants' actions constituted a continuing course of conduct. Plaintiff does not, and cannot, convincingly dispute that he knew of the prosecution's violation of the *Brady* rule by February, 1989 at the latest.[10]

### Alleged continuing violation

Plaintiff's continuing violation argument is an attempt to invoke a doctrine which originated in the context of Title VII claims to permit employees or ex-employees to assert a claim for discriminatory acts which predate the limitations period on the theory that such acts constituted a pattern of discriminatory treatment which became apparent only in light of ensuing developments. *Bronze Shields, Inc. v. New Jersey Department of Civil Service,* 667 F.2d 1074, 1080–84 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982) (Title VII case) and *Jewett v. International Telephone and Telegraph Corp.,* 653 F.2d 89, 91–93 (3d Cir.1981), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981) (Title VII case). Under such circumstances, the courts reasoned, it would be unjust not to permit the employee to show the pattern of discrimination which emerged over time.

Other section 1983 plaintiffs have invoked the continuing violation doctrine in this context, with varying degrees of success. Fed-

---

**8.** 28 U.S.C. § 2254.

**9.** See p. 4 *supra.*

**10.** See: plaintiff's complaint, ¶¶ 25 and 31.

eral courts have, for the most part, rejected such efforts. To bring their claims within the ambit of the doctrine, plaintiffs generally attempt to cast their claims of prosecutorial misconduct as a vendetta, carried out from beginning to end solely with the object of obtaining plaintiff's unlawful conviction. See, e.g., *McCune v. City of Grand Rapids,* 842 F.2d 903, 906 (6th Cir.1988) and *Corbitt v. Andersen,* 778 F.2d 1471, 1474 (10th Cir. 1985).

Application of the continuing violation doctrine in this context runs into two obstacles. In cases, such as the one at bar, in which the alleged wrong is trial-related, such as the failure to disclose exculpatory evidence or reliance on perjured testimony, the doctrine applies only if the wrong is deemed a continuing one based on its continued effect, i.e. plaintiff's continued incarceration. That is not correct. The real injury complained of is the denial of a fair trial. The result of that injury is conviction and possible incarceration. Permitting the plaintiff to cast the result of the illegal act as an illegal act itself is inconsistent with the requirement that a plaintiff invoking the continuing violation doctrine demonstrate that an illegal act occurred within the limitations period, not solely that he or she has felt the continuing effects of an earlier illegal act within that period. Supreme Court precedent clearly holds that it is the wrongful act, not its effect, which triggers start of the limitations period. See, e.g., *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) ("The proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful.") (emphasis in original); *Davis v. Louisiana State University,* 876 F.2d 412 (5th Cir.1989) (for a claim of discriminatory expulsion from a state university, it was irrelevant that student remained expelled within the applicable statutory period, since claims accrued when student was expelled); and *Pike v. City of Mission,* 731 F.2d 655 (10th Cir.1984) (refusal to reinstate plaintiff and maintenance of employment records reflecting plaintiff's discharge were insufficient to establish continuing violation). For that reason, courts have rejected application of the doctrine in this context. See, e.g., *Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410, 1415 n. 6 (10th Cir.1993). Cf. *Robinson v. Maruffi,* 895 F.2d 649, 655 (10th Cir.1990) and *Heller v. Plave,* 743 F.Supp. 1553, 1571 (S.D.Fla.1990) (In keeping with the allegations of a continuing conspiracy, the object of which was to wrongfully convict civil rights plaintiff, the court held that plaintiff's claim accrued "not with the wrongful act, but with the 'primary injury.' ")

This was the conclusion reached by the Third Circuit in *Sandutch, supra.* Confronted with the plaintiff's argument that "his continuing incarceration is a continuing tort, because as long as he continues to be incarcerated, he continues to suffer the injury of false imprisonment," the Third Circuit held that plaintiff had not alleged a continuing tort. Citing *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981) for the proposition that a " 'continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation,' " the Third Circuit held that Sandutch had "not alleged unlawful acts ... with the limitations period; rather he ... [had] alleged continuing ill effects from pre-conviction acts."

We see no distinction between the argument rejected in *Sandutch, supra,* and that pressed here. Smith is arguing, essentially, that so long as defendants continued their concealment of the lifters, theirs was a continuing wrong. *Sandutch, supra,* compels us to reject that argument as inconsistent with Third Circuit precedent.

Smith's attempt to cast the misconduct alleged as a single, continuous wrong which continued through the date of his discharge from state custody also conflicts with the facts of this case. The concealment of the lifters did not continue through the date of plaintiff's discharge from state custody. *Again,* it is undisputed that plaintiff's defense attorney knew of the lifters' existence, and the prosecution's failure to disclose their existence to the defense, at least as early as 1989. Defendants' deception ended when plaintiff and his counsel learned the truth, albeit through independent means.

The pendency of plaintiff's state appeal also had no effect on the start or running of the limitations period. The limitations period began when plaintiff learned of the prosecution's violation of the *Brady* rule. The pendency of his appeal before the state courts had no effect on plaintiff's obligation to toll the running of the statute on his section 1983 claim by filing a civil action within two years of that date. The fact that plaintiff's section 1983 action may have been stayed by the federal courts pending final disposition of his state court appeal does not excuse his failure to file the action or render the filing a meaningless act. Plaintiff's filing within that period would have placed the defendants on notice that their conduct toward plaintiff was the subject of a civil suit filed against them personally. They would, thereby, have been given the opportunity to preserve evidence, locate witnesses, etc. As the case now stands, if the action is not declared time-barred, defendants would be compelled to defend a claim for conduct which occurred eight years before this action was filed, even though plaintiff had all the information necessary to initiate the action several years before it was filed. That is the exactly the type of result which the statute of limitations is intended to prevent.

### Tolling of the statute

Under the circumstances, it is clear that Smith's cause of action on any claim [11] stemming from the prosecution's alleged concealment of the lifters, whether cast as the denial of a fair trial, the denial of due process or the denial of equal protection, accrued on the date he learned of the concealment.

■ His claim can, therefore, be rendered timely only if the statute was tolled for some reason. State tolling provisions apply to section 1983 claims. *Hardin v. Straub*, 490 U.S. 536, 538–39, 109 S.Ct. 1998, 2000–01, 104 L.Ed.2d 582 (1989) and *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64

L.Ed.2d 440 (1980). Any basis for tolling must, therefore, be found in Pennsylvania law. Unlike some other states, Pennsylvania law does not toll the running of the statute during a period of incarceration. 42 Pa. Cons.Stat.Ann. § 5554. *Sandutch, supra*, 684 F.2d at 254, citing *Jones v. Bombeck*, 375 F.2d 737, 739 (3d Cir.1967) (*per curiam*) and *Hooper v. Guthrie*, 390 F.Supp. 1327, 1331 n. 6 (W.D.Pa.1975). The fact that he was incarcerated until 1992 does not, therefore, afford Smith a basis for tolling the running of the statute.

In summary, it is clear from the undisputed facts that plaintiff's causes of action for the denial of a fair trial, equal protection [12] and due process accrued no later than February, 1989, the date he knew that the prosecution had failed to turn over exculpatory evidence. Nothing delayed the start of the limitations period or tolled it once it began. Plaintiff, therefore, had two years from the date of accrual to file a section 1983 claim against those members of the prosecution team allegedly responsible for concealing the lifters. This action was filed in September, 1993, well beyond the limitations period.

### Malicious prosecution

Smith's constitutional claim for malicious prosecution [13] is the only claim remaining. We examine it separately from the others, since it has a different accrual date.

■ The statute of limitations did not begin to run on plaintiff's malicious prosecution claim until the Pennsylvania Supreme Court ordered his discharge from state custody and ruled any retrial barred by the doctrine of Double Jeopardy. It was not until that time that plaintiff could establish all four elements required to state a cause of action for malicious prosecution. In this Circuit, proof that the underlying proceedings

---

11. The sole exception is a claim for malicious prosecution, which is discussed below.

12. Although this court questions the existence of an equal protection claim under the facts pled, that issue is not before us and we, therefore, do not address it. The statute of limitations is the

only basis on which defendants seek summary judgment.

13. We express no opinion on the viability of any potential state law claim for malicious prosecution, since none is pled.

**236**

terminated in the plaintiff's favor is essential to stating a claim for malicious prosecution.[14]

 Although plaintiff's malicious prosecution claim is timely, it is clearly barred on other grounds. After briefing on defendants' summary judgment motion was concluded,[15] the United States Supreme Court decided *Albright v. Oliver,* —— U.S. ——, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J., plurality opin.).[16] *Albright, supra,* abrogates the right to proceed on a malicious prosecution claim under the Due Process Clause of the Fourteenth Amendment. While there was no majority consensus on the rationale for the Court's holding, a majority of the justices agreed, for various reasons, that there is no substantive due process right under the Fourteenth Amendment to proceed on a claim of malicious prosecution. The Supreme Court left open the possibility that such a right may exist under the Fourth Amendment, a right not invoked here. See plaintiff's complaint.

The only basis cited by Smith for his malicious prosecution claim is the Fourteenth Amendment, a basis eliminated by the Court's holding in *Albright, supra.* Judgment will, therefore, be entered in favor of defendants on plaintiff's malicious prosecution claim on that ground.

**Summary**

While we are not suggesting that plaintiff was not done a grave injustice if the facts alleged are true, the delayed filing of his action bars this court from hearing the claim. The facts indicating what was known by plaintiff and his counsel and when it was known, are not disputed. We, therefore,

have no choice but to grant summary judgment in defendants' favor on all claims, and an order will be issued to that effect.

---

14. The other three elements which a plaintiff must allege and prove are: 1) that the defendant initiated criminal proceedings against him; 2) that the defendant executed the affidavit of probable cause in reckless disregard of the truth or falsity of the statements made therein; and 3) that the defendant acted with actual malice or for a purpose other than bringing the plaintiff to justice. *Lee v. Mihalich,* 847 F.2d 66, 69–70 (3d Cir.1988). See also: *Forster v. County of Santa Barbara,* 896 F.2d 1146, 1148 (9th Cir.1990).

15. Although the parties have not had an opportunity to brief this issue and we would, ordinarily, grant them such an opportunity before ruling, in this instance we see no purpose to be served by so doing. The Supreme Court's holding could not be clearer. There is no cause of action for

malicious prosecution grounded in the right of substantive due process under the Fourteenth. Nothing the parties could argue could change this immutable fact.

16. Chief Justice Rehnquist announced the judgment of the Court and wrote an opinion in which Justices O'Connor, Scalia, and Ginsburg joined. Justices Scalia and Ginsburg each wrote separate concurring opinions.

Justices Kennedy, Thomas and Souter concurred in the judgment. Justice Kennedy wrote a concurring opinion in which Justice Thomas joined. Justice Souter wrote separately in concurrence.

Justices Stevens and Blackmun dissented.