163 F.3d 169
 Felix TORRES, Appellee,
v.
John McLAUGHLIN, individually and in his capacity as an
officer of the Police Department of the City of Philadelphia
and in his capacity as an officer for the Commonwealth of
Pennsylvania, Bureau of Narcotics Investigations; John
Sunderhauf, Commonwealth of Pennsylvania Office of Attorney
General's Bureau of Narcotics Investigations; Commonwealth
of Pennsylvania, Office of Attorney General's Bureau of
Narcotics Investigation; and The City of Philadelphia, John
McLaughlin and John Sunderhauf, Appellants.
 No. 97-1476.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 11, 1997.
Decided Dec. 15, 1998.
 
 D. Michael Fisher, John O.J. Shellenberger (Argued), Calvin R. Koons, John G. Knorr, III, Office of Attorney General, Philadelphia, PA, Attorneys for Appellants.
 Anthony L. Cianfrani, John Nivala (Argued), Philadelphia, PA, Attorney for Appellee.
 Before: NYGAARD and ALITO, Circuit Judges, and DEBEVOISE, Senior District Judge.*
 OPINION OF THE COURT
 NYGAARD, Circuit Judge.
 
 
 1
 Felix Torres sued John McLaughlin, a Philadelphia police officer assigned to the Pennsylvania Office of Attorney General Bureau of Narcotics Investigations Task Force, and John Sunderhauf, McLaughlin's supervisor, under 42 U.S.C. § 1983 alleging that the officers maliciously prosecuted Torres and thereby violated his constitutional rights. McLaughlin and Sunderhauf appeal the District Court's denial of their motion for summary judgment in which they claimed that their actions are protected by the qualified immunity doctrine. We have jurisdiction in this appeal because "an order rejecting the defense of qualified immunity at either the dismissal stage or the summary judgment stage is a 'final' judgment subject to immediate appeal." Behrens v. Pelletier, 516 U.S. 299, 307, 116 S.Ct. 834, 839, 133 L.Ed.2d 773 (1996). Our review is plenary, and we draw all reasonable inferences in favor of the non-movant, Torres. See Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir.1997); J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1530, 1531 (3d Cir.1990). We will reverse.
 
 I.
 
 2
 Officer McLaughlin arrested Torres while Torres was on his way to buy heroin.[1] The following day, the Philadelphia District Attorney's Office issued a criminal complaint against Torres, charging him with the unlawful possession of eighty-seven vials of cocaine with the intent to deliver.[2] That same day, Torres appeared at a preliminary hearing and was informed of the charges. He signed his own bond and was released from custody, and remained free until convicted.
 
 
 3
 At the preliminary hearing, pre-trial hearing and trial, McLaughlin was the government's sole witness against Torres. Torres testified on his own behalf at the trial and denied the charges, and his attorney argued to the jury that McLaughlin's testimony should not be believed. The jury returned a guilty verdict and the court immediately revoked Torres's bail. He was sentenced to three to six years in prison and assessed a $10,000 fine.
 
 
 4
 Approximately seven and one-half months later his attorneys moved for a new trial. The Commonwealth of Pennsylvania did not oppose the motion and informed the court that if it granted the motion, the Commonwealth would move for a nolle prosequi. According to Torres, the Commonwealth sought a nolle prosequi because it believed that McLaughlin might have lied in a search warrant application in another, unrelated case.[3] The court granted both Torres's motion for a new trial and the Commonwealth's motion for a nolle prosequi, and Torres was released.
 
 
 5
 Torres alleged malicious prosecution and sued McLaughlin, Sunderhauf, the Bureau of Narcotics Investigations and the City of Philadelphia pursuant to 42 U.S.C. § 1983 and state law. Torres claimed that the malicious prosecution violated his First, Fourth, Fifth and Fourteenth Amendment rights and various state law rights. The District Court dismissed all claims against the Bureau and all state law claims against all parties. Specifically, the court held that: (1) all claims arising from the arrest were barred by the statute of limitations, and (2) all claims arising from McLaughlin's pre-trial and trial testimony were barred by the absolute immunity defense accorded trial testimony. The court then reviewed Torres's "inartfully drawn complaint" and concluded that only a claim rooted in the Fourth Amendment survived the motion to dismiss. The court then noted that Torres failed to demonstrate that the criminal proceeding terminated in his favor, a necessary element of a section 1983 malicious prosecution claim. Accordingly, the court dismissed the complaint without prejudice and gave him leave to amend the complaint within fifteen days.
 
 
 6
 Torres amended his complaint and reasserted all claims against all defendants alleging violations of rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments and seeking damages pursuant to section 1983. Torres stated that the defendants violated his "rights to be secure in his person and property, to be free from excessive force, and from malicious prosecution and due process." (App. at 57a). Torres also asserted state law claims for assault, battery and official oppression against McLaughlin.
 
 
 7
 McLaughlin and Sunderhauf answered Torres's amended complaint, and moved for summary judgment claiming, inter alia, that their actions fall within the qualified immunity doctrine. The District Court rejected the officers' qualified immunity defense and denied the motion for summary judgment. McLaughlin and Sunderhauf now appeal the District Court's denial of qualified immunity and denial of summary judgment.
 
 II.
 
 8
 McLaughlin and Sunderhauf contend that the District Court erred by rejecting the qualified immunity claim. Their argument is two-fold. First, McLaughlin and Sunderhauf argue that in the decision to prosecute Torres, McLaughlin violated no constitutional right. In the alternative, they submit that even if he violated Torres's constitutional rights, these rights were not clearly established at the time of McLaughlin's actions. In sum, they claim that the doctrine of qualified immunity appertains, and Torres's claim should be dismissed.A.
 
 
 9
 When resolving issues of qualified immunity, we must first determine "whether the plaintiff has alleged a deprivation of a constitutional right," County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998) (citing Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991)), which we generally cannot "assume[ ], without deciding." See Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). It is only after satisfying that inquiry that we should then "ask whether the right allegedly implicated was clearly established at the time of events in question." Id.
 
 
 10
 Torres's original and amended complaints alleged violations of the First, Fourth, Fifth and Fourteenth Amendments. The District Court dismissed all constitutional claims except those grounded in the Fourth Amendment. Torres now insists that his sole claim is under the Fourth Amendment. This claim can be characterized as a claim based on McLaughlin's role in initiating the prosecution by conveying false information to the prosecutor. The harm resulting from this action is Torres's incarceration after the jury found him guilty.
 
 
 11
 The District Court construed Albright v. Oliver, 510 U.S. 266, 267-70, 114 S.Ct. 807, 815-16, 127 L.Ed.2d 114 (1994), to allow only malicious prosecution claims based on violations of the Fourth Amendment. Several other courts have interpreted Albright in the same manner. See, e.g., Uboh v. Reno, 141 F.3d 1000 (11th Cir.1998); Murphy v. Lynn, 118 F.3d 938 (2d Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); Taylor v. Waters, 81 F.3d 429, 436 & n. 5 (4th Cir.1996). We are not convinced by the reasoning of these courts. We instead believe that Albright stands for the broader proposition that a section 1983 claim may be based on a constitutional provision other than the Fourth Amendment. However, we note that Albright commands that claims governed by explicit constitutional text may not be grounded in substantive due process.
 
 
 12
 Moreover, to the extent that other courts of appeal seem to hold that Albright requires a Fourth Amendment violation as a basis for a section 1983 malicious prosecution claim, we note that those cases are factually distinct from Torres's. Albright and the subsequent courts of appeal cases that rely on the Fourth Amendment involved pre-trial deprivations of liberty. Torres's claim, however, arises from post-conviction incarceration.
 
 
 13
 Albright brought a malicious prosecution claim under section 1983 contending that an officer deprived Albright's Fourteenth Amendment substantive due process rights to be "free from criminal prosecution except upon probable cause." See Albright, 510 U.S. at 269, 114 S.Ct. at 810-11. Writing for a four justice plurality, Chief Justice Rehnquist commented that Albright's articulated claim was "a very limited one" that did not raise procedural due process or Fourth Amendment claims. See Albright, 510 U.S. at 271, 114 S.Ct. at 812. The Court plurality then noted that " 'as a general matter, the Court has always been reluctant to expand the concept of substantive due process' " preferring, instead, to limit substantive due process protections to "matters relating to marriage, family, procreation, and the right to bodily integrity." Id. at 271-72, 114 S.Ct. 807 (quoting Collins v. Harker Heights, 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). The plurality concluded that a malicious prosecution claim is "markedly different" from the Court's genre of substantive due process cases and announced that "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.' " Id. at 272, 273, 114 S.Ct. 807 (quoting Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). In fact, the plurality determined only that "substantive due process, with its 'scarce and open-ended' 'guideposts' " could afford Albright no relief. Id. at 275, 114 S.Ct. 807 (quoting Collins, 503 U.S. at 125, 112 S.Ct. 1061).
 
 
 14
 Later, in Heck v. Humphrey, the Court addressed whether an inmate may recover damages under section 1983 when a state police officer and county prosecutors "engaged in an 'unlawful, unreasonable, and arbitrary investigation' leading to petitioner's arrest; 'knowingly destroyed' evidence 'which was exculpatory in nature and could have proved [petitioner's] innocence'; and caused 'an illegal and unlawful voice identification procedure' to be used at petitioner's trial." 512 U.S. 477, 479, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). The Court decided that "[t]he common law cause of action for malicious prosecution provide[d] the closest analogy" to the claims brought by the petitioner and noted that "a successful malicious prosecution plaintiff may recover, in addition to general damages, 'compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of the society.' " Id. at 484, 114 S.Ct. 2364 (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts 887-88 (5th ed.1984)).
 
 
 15
 The Court rejected the inmate's claims and held that "a section 1983 plaintiff must prove that a conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87, 114 S.Ct. 2364. The Court reasoned that to permit the petitioner's claim would result in permitting "a collateral attack on the conviction through the vehicle of a civil suit." Id. at 484, 114 S.Ct. 2364. The fact that the Court addressed a claim for malicious prosecution based on pre-trial acts does not alter our decision. We read Heck to mean that if a section 1983 plaintiff seeks to recover damages for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, the plaintiff must prove that the conviction or sentence has been reversed, expunged, or declared invalid. Accordingly, we do not read Heck as determining the validity of certain section 1983 malicious prosecution claims.
 
 
 16
 County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998), supports our reading of Albright. In Lewis, the Court addressed whether the Fourth Amendment or substantive due process principles governed police liability during a high speed chase. The Court observed that:
 
 
 17
 "Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is "covered by" the Fourth Amendment. It is not.
 
 
 18
 Id. (quoting United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 1228 n. 7, 137 L.Ed.2d 432 (1997)). Therefore, contrary to the interpretation given by other courts of appeal, we do not read Albright to hold that a malicious prosecution claim can only be based in a Fourth Amendment violation. Accordingly, a section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution.
 
 B.
 The Fourth Amendment guarantees:
 
 19
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
 
 
 20
 U.S. Const. amend. IV.
 
 
 21
 Torres does not contend that an unconstitutional search occurred. Any claims relating to Torres's warrantless arrest are barred by the statute of limitations. Torres's Fourth Amendment claim concerns "his unconstitutional confinement" beginning with his conviction on September 29, 1995. Hence, the only remaining issue is whether Torres's post-conviction incarceration was a Fourth Amendment seizure. The District Court concluded that it was. We disagree.
 
 
 22
 Although the Supreme Court has repeatedly defined when a Fourth Amendment seizure occurs or begins, it has not determined when that seizure ends and Fourth Amendment protections no longer apply. We also have left open that question. It is beyond dispute that the Fourth Amendment has been construed to include events both before and after a formal arrest. See, e.g., Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) (Fourth Amendment applies to police conduct that stops short of "a 'technical arrest' or 'full-blown search' "); Gerstein, 420 U.S. at 114, 95 S.Ct. at 863 ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint following arrest."); Bell v. Wolfish, 441 U.S. 520, 556-60, 99 S.Ct. 1861, 1883-85, 60 L.Ed.2d 447 (1979) (assuming arguendo that Fourth Amendment applies to pre-trial detainees' room and body cavity searches). This case, however, concerns the other end of the Fourth Amendment continuum--post-conviction incarceration. Although Fourth Amendment seizure principles may in some circumstances have implications in the period between arrest and trial, we conclude that Torres's posttrial incarceration does not qualify as a Fourth Amendment seizure.
 
 
 23
 Neither we nor the Supreme Court has indicated that the Fourth Amendment should be expanded to include postconviction incarceration. Indeed, the Framers of the Constitution drafted the Fourth Amendment to quell pretrial deprivations of liberty. See Albright, 510 U.S. at 274, 114 S.Ct. at 813. The plurality in Albright did observe that the Court has "in the past noted the Fourth Amendment's relevance to the deprivations of liberty that go hand in hand with criminal prosecutions." Id. (citing Gerstein, 420 U.S. at 114, 95 S.Ct. at 862). The plurality continued, however, "that the accused is not 'entitled to judicial oversight or review of the decision to prosecute.' " Id. (quoting Gerstein, 420 U.S. at 118-19, 95 S.Ct. at 865) (citations omitted). In a concurrence, Justice Ginsburg related that the "view of the definition and duration of a seizure" should "comport[ ] with common sense and common understanding." Id. at 278, 114 S.Ct. 807 (Ginsburg, J., concurring). We note that at least four courts of appeal have refused to apply the Fourth Amendment beyond initial arrests. See, e.g., Riley v. Dorton, 115 F.3d 1159, 1163 (4th Cir.1997); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.1996); Brothers v. Klevenhagen, 28 F.3d 452, 456 (5th Cir.1994); Wilkins v. May, 872 F.2d 190, 192 (7th Cir.1989). Courts that have extended Fourth Amendment protections to include the period a suspect remains with arresting officers have not indicated that post-conviction incarceration should be treated as a seizure under the Fourth Amendment. See Gonzalez v. Entress, 133 F.3d 551, 554 (7th Cir.1998) ("[I]t seriously misunderstands the fourth amendment to treat a conviction based on improperly obtained evidence as an independent violation of the fourth amendment. The conviction is not an unreasonable search and seizure."); Pierce v. Multnomah County, Oregon, 76 F.3d 1032, 1042 (9th Cir.1996) ("Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody....").
 
 
 24
 We conclude that the limits of Fourth Amendment protection relate to the boundary between arrest and pretrial detention. At most, there may be some circumstances during pre-trial detention that implicate Fourth Amendment rights; however, we refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention. See United States v. Johnstone, 107 F.3d 200, 206-07 (3d Cir.1997) (commenting that "[w]here the seizure ends and pre-trial detention begins is a difficult question"). Therefore, consistent with our language in Johnstone, we conclude that post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment, and Torres's incarceration did not violate his Fourth Amendment rights. The central inquiry before us is the District Court's rejection of the officers' motion for summary judgment based on qualified immunity. Because we have determined that Torres has not alleged a violation of the Fourth Amendment, the only constitutional provision pressed by Torres in this appeal, we need not reach the question of whether the officers have a qualified immunity.
 
 III.
 
 25
 In sum, Torres's post-conviction incarceration is not a seizure within the Fourth Amendment. Therefore, we will reverse the order of the District Court and remand the cause for the District Court to enter summary judgment in favor of Officers McLaughlin and Sunderhauf as to Torres's section 1983 malicious prosecution claim based in the Fourth Amendment.
 
 DEBEVOISE, Senior District Judge, dissenting:
 
 26
 For three independent reasons the district court's denial of McLaughlin's and Sunderhauf's motion for summary judgment should be affirmed.
 
 
 27
 First, if, as the district court held, "Albright requires that a plaintiff base a malicious prosecution claim on the Fourth Amendment ... and thus show ... some deprivation of liberty that rises to the level of a Fourth Amendment 'seizure' ...," 966 F.Supp. at 1361 n. 7, post trial imprisonment constitutes a seizure. The majority opinion defines "seizure" unduly narrowly.
 
 
 28
 Second, even if the majority opinion's narrow definition of "seizure" is correct, there was, despite the district court's view to the contrary, a seizure in this case. Although the statute of limitations precludes Torres from bringing a false arrest charge based upon the deprivation of his liberty which took place prior to trial, these deprivations may nevertheless constitute a "seizure" for the purpose of his malicious prosecution suit.
 
 
 29
 Third, if as the majority opinion states, " ... we do not read Albright to hold that a malicious prosecution claim can only be based on a Fourth Amendment violation ... a section 1983 malicious prosecution claim may also include police conduct that violates the Fourth Amendment, the procedural due process clause or other explicit text of the Constitution", then Torres should be allowed to proceed without the necessity of establishing a Fourth Amendment seizure. He brought his claim under not only the Fourth Amendment but also under the Fifth and Fourteenth Amendments to the Constitution. It was the district court which, applying Albright, confined him to the Fourth Amendment. If the district court was wrong in this respect, then, in accordance with the rationale of the majority opinion, we should affirm the denial of McLaughlin's and Sunderhauf's motion, although on grounds that would be different from the grounds upon which the district court relied.
 
 
 30
 Turning to the first reason for affirmance, the district court's interpretation of the plurality opinion in Albright was a reasonable one, consistent with the views of a number of other courts, that is, that Albright requires that a plaintiff base a malicious prosecution claim on the Fourth Amendment and that in addition to the elements of the common law tort of malicious prosecution, a plaintiff must establish some deprivation of liberty that rises to the level of a Fourth Amendment seizure. To hold, as the majority opinion does, that post-conviction incarceration cannot constitute a "seizure" seriously impairs the important right to be free from imprisonment resulting from malicious prosecution by state officials, and effectively destroys a cause of action, which Albright assumes exists and which the majority opinion states does in fact exist.
 
 I. The District Court Opinion
 
 31
 The district court noted correctly that prior to Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the elements of liability in this circuit for the constitutional tort of malicious prosecution under § 1983 coincided with those of the common law tort and, I believe correctly, that "[i]t is clear that Albright requires that a plaintiff base a malicious prosecution claim on the Fourth Amendment ... and thus show, in addition to the elements of the common law tort of malicious prosecution, some deprivation of liberty that rises to the level of a Fourth Amendment 'seizure' in order for a state law claim to succeed as a federal one." Torres v. McLaughlin, 966 F.Supp. 1353, 1361 n. 7 (E.D.Pa.1997). The district court then proceeded to examine each of the events which might constitute a seizure in the present case: i) Torres's warrantless arrest on June 2, 1994; ii) the preliminary hearing on June 10, 1994; and iii) Torres's conviction on September 29, 1995 and his subsequent incarceration until May 13, 1996.
 
 
 32
 In an earlier decision the district court had held that Torres's warrantless arrest could not state a cause of action for false arrest because he had filed his suit after the expiration of the two-year statute of limitations. The latest district court opinion reviewed the circumstances of Torres's preliminary hearing, noting that after his arrest he had been released on a personal recognizance bond conditioned upon his appearing in court as required and submitting himself to all orders and processes of the court. He appeared for the preliminary hearing on June 10, 1994 and remained at liberty until his conviction and incarceration. Justice Ginsburg's concurring opinion in Albright suggests that even such minimal limitations upon Torres's freedom constitute a "seizure" under the Fourth Amendment as long as criminal charges against him remain pending. The district court disagreed with Justice Ginsburg's reasoning, holding that "[b]y not requiring that the defendant be subject to any significant restrictions on his liberty--such as travel restrictions or having to post bail--in order to state a § 1983 malicious prosecution claim, Justice Ginsburg's reasoning excises the constitutional element of a § 1983 claim. In effect, every state law claim for false arrest or malicious prosecution would, without more, also state a claim under § 1983." Torres, 966 F.Supp. at 1360-1361. The district court further observed that Justice Ginsburg's rationale would do away with the common law distinctions between the torts of false arrest and malicious prosecution. Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). For example, for statute of limitations purposes, a § 1983 claim for false arrest accrues on the date of the plaintiff's arrest, while a malicious prosecution claim does not accrue until a favorable termination is obtained. Rose v. Bartle, 871 F.2d 331, 348-351 (3d Cir.1989).
 
 
 33
 Having concluded that neither the June 3, 1994 preliminary hearing nor any aspect of the prosecution of the criminal case against Torres prior to his September 29, 1995 incarceration constituted a "seizure" necessary to establish his claim, the district court held that "Torres's incarceration from September 29, 1995, until his release on May 13, 1996, is certainly a cognizable deprivation of liberty under the Fourth Amendment that can serve as the basis for Torres's § 1983 malicious prosecution claim" Torres, 966 F.Supp. at 1364.
 
 
 34
 The district court found that Torres, having established the Fourth Amendment basis for his claim, could also make out the common law elements of a malicious prosecution claim, namely that i) the defendants initiated a criminal proceeding, ii) which ended in plaintiff's favor, and iii) which was initiated without probable cause, and iv) the defendants acted with actual malicious purpose or for a purpose other than bringing the defendant to justice. Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir.1988). The district court ruled that there was sufficient evidence to find both McLaughlin and Sunderhauf liable for the initiation of Torres's criminal prosecution but that there was insufficient evidence to establish liability of the City of Philadelphia under the principles established in Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
 
 
 35
 McLaughlin and Sunderhauf raised the defense of qualified immunity, asserting that after the Supreme Court's decision in Albright, reasonable officials in their positions would not have known that maliciously prosecuting an innocent individual could give rise to a § 1983 action. The district court rejected this defense, stating:
 
 
 36
 Notwithstanding defendants' claim, the case law in this Circuit prior to Albright (the Supreme Court in Albright recognized that the Third Circuit had the most expansive view of malicious prosecution claims) ... coupled with the clear implication in Albright that a malicious implication [sic] claim may be asserted under the Fourth Amendment and the weight of federal authority post-Albright leads us to the conclusion that, at the time of the incident at issue here ... malicious prosecution was a sufficiently established constitutional violation under § 1983 so as to deprive defendants McLaughlin and Sunderhauf of their assertions of qualified immunity.
 
 
 37
 Torres, 966 F.Supp. at 1357 n. 1 (citations omitted).
 
 
 38
 The district court denied McLaughlin's and Sunderhauf's motion for summary judgment and granted the summary judgment motion of the City of Philadelphia.
 
 II. Existence of a Constitutional Right
 
 39
 The majority opinion holds that a malicious prosecution claim based upon the Fourth Amendment cannot be predicated upon a post-conviction incarceration, stating "we conclude that Torres's post-trial incarceration does not qualify as a Fourth Amendment seizure."
 
 
 40
 It is true that Fourth Amendment jurisprudence is usually associated with restraints on personal liberty during the investigatory detention, arrest or pretrial detention of a suspect. The plurality opinion in Albright stated that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." 510 U.S. at 274, 114 S.Ct. 807. Abuses occurring during such proceedings until the time of arraignment may constitute the tort of false arrest. Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir.1995), cert. denied, 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996). This cause of action accrues at the time of arrest.
 
 
 41
 In the case of malicious prosecution, however, the cause of action does not accrue until the criminal proceedings terminate in plaintiff's favor, and the required seizure is likely to occur post-arraignment. The Court of Appeals for the First Circuit recognized this distinction: "Damages for false arrest are restricted to the time period between the initial detention and the issuance of legal process, whereas the tort of malicious prosecution contemplates general damages as well as compensation for any arrest and imprisonment preceding the termination of the criminal proceeding." Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 4 (1st Cir.1995). Similarly, the Court of Appeals for the Second Circuit, discussing the impact of Albright, stated that "to successfully pursue a § 1983 claim of malicious prosecution in violation of his Fourth Amendment rights, [plaintiff] must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." Singer, 63 F.3d at 117. The Court of Appeals for the Fifth Circuit has noted that "the portion of Albright that suggests that the Fourth Amendment applies to pretrial deprivations of liberty did not receive the support of a majority of Justices." Brothers v. Klevenhagen, 28 F.3d 452, 456 n. 3 (5th Cir.), cert. denied, 513 U.S. 1045, 115 S.Ct. 639, 130 L.Ed.2d 545 (1994).
 
 
 42
 Accordingly, in the present case any claim which Torres may have for pre-arraignment false arrest is time barred, and his constitutionally based malicious prosecution claim rests upon a post-arraignment deprivation of liberty. If a constitutional claim of malicious prosecution survives Albright, and a majority of the courts of appeals addressing the question have held that it does, and if there were no pretrial seizure, a post-arraignment "seizure" must in many cases qualify as the Fourth Amendment prerequisite. The district court ruled that "Torres's incarceration from September 29, 1995, until his release on May 13, 1996, is a cognizable deprivation of liberty under the Fourth Amendment that can serve as the basis for Torres's § 1983 malicious prosecution claim." Torres, 966 F.Supp. at 1364. To have held otherwise would have immunized intentional official misconduct that resulted in an egregious deprivation of liberty. It would produce anomalous results to hold that a malicious prosecution action lies if fortuitously a plaintiff suffered an arrest before trial but does not lie if his deprivation was limited to post trial imprisonment. I do not believe that is what the Supreme Court intended in Albright.
 
 
 43
 Assuming, however, that post trial confinement does not constitute a Fourth Amendment seizure for § 1983 malicious prosecution purposes, the totality of the deprivations of Torres's liberty which occurred prior to trial in this case would constitute such a seizure. On June 2, 1994, McLaughlin arrested Torres as he was walking on the street. According to the complaint McLaughlin handcuffed Torres, placed him in the back seat of a police vehicle and drove him to the Bureau of Narcotics Investigations parking lot, where McLaughlin threw him to the ground and repeatedly kicked him in his back, shoulders and sides.
 
 
 44
 The following day, a criminal complaint was issued against Torres charging him with unlawful possession of 87 vials containing cocaine with intent to deliver. Still under arrest he was produced for a preliminary arraignment. He was then permitted to sign a bond and was released from custody. The bond provided:
 
 
 45
 The CONDITIONS of this bond are that the defendant will:
 
 
 46
 (1) Appear before the issuing authority and in the Courts of the County of Philadelphia, Pennsylvania, at all times as his presence may be required, ordered or directed, until full and final disposition of the case, to plead, to answer and defend as ordered the aforesaid charge or charges.
 
 
 47
 (2) Submit himself to all orders and processes of the issuing authority or Court.
 
 
 48
 (3) The DEFENDANT and the SURETY must give written notice to the issuing authority, Clerk of Courts, Room 685 City Hall, the District Attorney AND Court Bail Agency, 219 North Broad St., telephone number MU6-7421, of any change in his address within forty-eight hours of the date of his address change.
 
 
 49
 (4) Comply with any specific requirement of release imposed by the issuing authority or Court, such as a satisfactory participation in a designated program.
 
 
 50
 A preliminary hearing was held on June 10, 1994 before a Philadelphia Municipal Court judge. McLaughlin testified. The judge bound Torres for action in the Court of Common Pleas, scheduling an arraignment for July 1. Torres's bail remained unchanged.
 
 
 51
 On June 20, 1994 the District Attorney filed an information charging that Torres had knowingly and intentionally possessed a controlled substance with intent to deliver in violation of Pennsylvania law. Again, Torres's bail situation remained unchanged. On April 13, 1995 a pre-trial hearing was held on a motion by Torres to require the District Attorney to reveal the location from which McLaughlin had observed Torres allegedly sell cocaine on June 2, 1994. The hearing then proceeded as a motion to suppress seized evidence. McLaughlin testified at this hearing. The court denied both motions.
 
 
 52
 The June 2 arrest was a preliminary step in the criminal proceedings which form the basis of the malicious prosecution claim. The June 3 criminal complaint constituted a formal charge and the initiation of the criminal proceedings. Torres was under arrest at the time and remained under arrest until produced for the preliminary arraignment later that day. Thereafter he remained under the restrictions imposed by the bond and as required appeared at the subsequent court proceedings. Courts of Appeals in two circuits which have considered the question have held that circumstances less restrictive than these constitute seizure for the purpose of a malicious prosecution suit based on the Fourth Amendment.
 
 
 53
 In Whiting v. Traylor, 85 F.3d 581 (11th Cir.1996) the plaintiff, while operating his boat, was questioned by two Florida Marine patrol officers about the boat's lack of registration decals. The officers seized the boat and two months later obtained an arrest warrant for plaintiff. Plaintiff voluntarily turned himself in. He was detained overnight, then released on bond and was later charged with resisting an officer without violence. He appeared for arraignment, was again arrested and was issued citations for various offenses relating to the registration decal. He was again released but had to appear in court two times before prevailing in the proceedings. He initiated a § 1983 action alleging malicious prosecution in violation of his Fourth Amendment rights.
 
 
 54
 The court noted three possible seizures in that case: i) plaintiff's voluntary surrender following the issuance of the arrest warrant, ii) plaintiff's arrest as he left the courtroom, and iii) plaintiff's being required to appear to answer the charges after being released on bond. The court questioned but did not decide whether the continuing obligation to appear in court constituted a seizure. However, the court had no difficulty concluding that plaintiff's court room arrest and his surrender after he learned of a warrant were "seizures that could be the basis of a section 1983 claim." 85 F.3d at 585. The court stated:
 
 
 55
 Justice Rehnquist observed in Albright that Albright's "surrender to the State's show of authority" (that is, his voluntary surrender following the issuance of an arrest warrant) "constituted a seizure for purposes of the Fourth Amendment." 510 U.S. at 271, 114 S.Ct. at 812. So, Whiting's initial surrender was a "seizure," he subjected himself physically to the force of the state in response to an arrest warrant. And, we have no doubt that the forceful arrest of Whiting at the courthouse was a "seizure."
 
 
 56
 85 F.3d at 585 n.6.
 
 
 57
 The Court of Appeals for the Second Circuit comes to a similar conclusion in Murphy v. Lynn, 118 F.3d 938 (2nd Cir.1997). In that case police officers arrested plaintiff after angry words were spoken during a traffic violation stop. Plaintiff was held overnight, arraigned the next day before a town court judge on various charges, and released on his own recognizance. The conditions of release were that he return to court whenever his presence was required and that he not leave the State of New York while the criminal charge was pending. Ultimately the charges were resolved favorably to plaintiff, and he instituted and prevailed in a § 1983 malicious prosecution action.
 
 
 58
 The Court recognized that in order to prevail on a § 1983 malicious prosecution claim "the plaintiff must show a violation of his rights under the Fourth Amendment". 118 F.3d at 944. The Court held that "while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment" and, further, "that the restrictions imposed on Murphy constituted a seizure within the meaning of the Fourth Amendment." 118 F.3d at 947.
 
 
 59
 The deprivation of Torres's liberty were significantly more severe than those which formed the basis of a Fourth Amendment seizure in Whiting and Murphy. Disregarding the arrest and the beatings which allegedly took place prior to his stay in jail, he was in fact imprisoned. At the time a criminal complaint was issued against him he was in jail. He remained under arrest until and during the preliminary arraignment. Only after the arraignment was he freed on bond. The bond, of course, required his presence in court when ordered and imposed other conditions upon him. Even though the statute of limitations bars a false arrest charge based on these events, a malicious prosecution claim does not accrue until favorable disposition of the criminal proceedings and these events can constitute the seizure element of such a claim. The recent decision of another panel of this Court agrees with Justice Ginsburg's concurring opinion in Albright and holds that restrictions such as those imposed upon Torres in this case amount to a seizure. Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir.1998).
 
 
 60
 Thus, even if the majority opinion is correct in its holding that post trial detention is not a Fourth Amendment seizure for malicious prosecution purposes, there was a pretrial seizure in the present case and the district court's ruling should be affirmed on this alternative ground.
 
 
 61
 Finally, the majority states that "we do not read Albright to hold that a malicious prosecution claim can only be based on a Fourth Amendment violation." (Slip op at 173). Torres did not base his claim only on the Fourth Amendment. It was the district court, construing Albright, which limited him to the Fourth Amendment. If the district court was in error in this respect, and if the majority opinion is correct, the existence of any form of seizure is irrelevant and Torres can proceed on his claim under "the procedural due process claims or other explicit text of the Constitution" in accordance with the majority opinion.
 
 
 62
 Thus there are three alternative grounds for holding that plaintiff has alleged a deprivation of a constitutional right.
 
 III. Qualified Immunity
 
 63
 Having concluded that Torres had not alleged a deprivation of a constitutional right, it is unnecessary for the majority opinion to address the question of qualified immunity. While Albright may have left in doubt the precise constitutional pigeon hole providing the basis for a malicious prosecution claim, it did not weaken long established law that a state official violates a person's constitutional rights when he maliciously institutes a criminal prosecution resulting in imprisonment against him. The district court correctly held that when McLaughlin provided allegedly false information to the district attorney that caused the district attorney to initiate a prosecution which ultimately resulted in Torres's imprisonment, a reasonable law enforcement official would have known that his conduct violated Torres's constitutional rights.
 
 
 64
 Government officials engaged in discretionary functions have qualified immunity from suits for damages brought under § 1983 but only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The contours of the right must be sufficiently obvious that a reasonable official would understand that his actions violate the law. Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." Good v. Dauphin County Social Services, 891 F.2d 1087, 1092 (3d Cir.1989).
 
 
 65
 The appellants argue that the district court's denial of their motion for summary judgment on the issue of qualified immunity should be reversed because in the wake of the Supreme Court's January 24, 1994 decision in Albright, the state of the law of constitutional malicious prosecution was so uncertain that in June 1994 "[a] reasonable officer ... could have concluded that no constitutional cause of action arose out of the decision to initiate a criminal prosecution, even if the decision was malicious and without probable cause." Appellants' Br. At 24-25. Torres responds that no objective official could have reasonably believed that maliciously causing the prosecution and confinement of an innocent person was constitutional.
 
 
 66
 Prior to Albright, our court had taken the most expansive view of all the courts of appeals with regard to the specific elements required to establish a § 1983 action for the tort of malicious prosecution: the elements of the constitutional tort and the common law tort were identical. See Albright, 510 U.S. at 270 n. 4, 114 S.Ct. 807 ("The most expansive approach is exemplified by the Third Circuit, which holds that the elements of a malicious prosecution action under § 1983 are the same as the common law tort of malicious prosecution"); Lee, 847 F.2d at 70; Torres, 966 F.Supp. at 1361 n. 7 (E.D.Pa.1997) and cases cited therein. The district court found that Torres had sufficiently satisfied all four elements of a common law malicious prosecution claim to survive that portion of the defendants' motion for summary judgment, a portion of the ruling which is not here appealed. If McLaughlin's predicate actions in the present case had taken place prior to Albright, then, he and Sunderhauf clearly would not be entitled to qualified immunity because a reasonable official would have known that his actions violated Torres's constitutional right to be free from malicious prosecution. In Albright, however, a plurality of a fractured Supreme Court[1] required that a plaintiff base a malicious prosecution claim on the Fourth Amendment (rather than the Fourteenth Amendment's substantive due process jurisprudence) "and thus show, in addition to the elements of the common law tort of malicious prosecution, some deprivation of liberty that rises to the level of a Fourth Amendment 'seizure' in order for a state law claim to succeed as a federal one." Torres, 966 F.Supp. at 1361 n. 7.
 
 
 67
 Albright was falsely accused of selling a substance which looked like cocaine. He surrendered to the Illinois authorities after an arrest warrant charging him with the sale had been issued. He was released after posting bond and the action was later dismissed on the ground that the charge did not state an offense under state law. Albright then instituted an action against the police officer under § 1983 alleging that he had been deprived of his substantive due process rights under the Fourteenth Amendment. The Supreme Court affirmed the Seventh Circuit Court of Appeal's affirmance of the trial court's order of dismissal, but on different grounds.[2] Chief Justice Rehnquist identified the Fourth Amendment, rather than the Fourteenth Amendment, as the proper constitutional source for Albright's claim and noted that Albright's '"surrender to the State's show of authority constituted a seizure for purposes of the Fourth Amendment." 510 U.S. at 271, 114 S.Ct. 807. Ultimately, the Supreme Court "express[ed] no view as to whether [Albright's] claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari." Id. at 275, 114 S.Ct. 807.
 
 
 68
 The Court in Albright noted that "the extent to which a claim of malicious prosecution is actionable under § 1983 is one on which there is an embarrassing diversity of judicial opinion." Id. at 270 n. 4 (citation and internal quotation marks omitted). While most courts of appeals recognized that a malicious prosecution claim was cognizable under § 1983, differences arose over the elements necessary to establish such a claim. Nonetheless, by declining to analyze Albright's claim under the Fourth Amendment, the Supreme Court did not resolve this split of opinion among the courts of appeals. As the Tenth Circuit of Appeals has observed, "in many ways Albright muddied the waters rather than clarified them." Taylor v. Meacham, 82 F.3d 1556, 1561 (10th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 186, 136 L.Ed.2d 125 (1996).
 
 
 69
 A majority of the courts of appeals that have considered this issue, including the Second, Fourth, Sixth, Seventh, Tenth and Eleventh Circuits, have concluded that constitutional malicious prosecution claims remain viable after Albright although based upon violations of the Fourth Amendment. See, e.g., Singer, 63 F.3d at 116 ("The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person--i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of 'seizure' "); Taylor v. Waters, 81 F.3d 429, 435-437 (4th Cir.1996); Moore v. Hayes, 83 F.3d 422, 1996 WL 200282, at * 3-* 4 (6th Cir.1996) ("To the extent that a claim of malicious prosecution is actionable under § 1983, the Supreme Court has held that the claim must be judged under the probable cause requirements of the Fourth Amendment"); Smart v. Board of Trustees, 34 F.3d 432, 434 (7th Cir.1994) (reading Albright as allowing constitutional malicious prosecution claims so long as they are brought under the Fourth Amendment), cert. denied, 513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995); Taylor v. Meacham, 82 F.3d at 1561 ("[W]e conclude that our circuit takes the common law elements of malicious prosecution as the 'starting point' for the analysis of a § 1983 malicious prosecution claim, but always reaches the ultimate question, which it must, of whether the plaintiff has proven a constitutional violation. Following Albright, in the § 1983 malicious prosecution context, that constitutional right is the Fourth Amendment's right to be free from unreasonable seizures"); Whiting v. Traylor, 85 F.3d 581, 584-585 (11th Cir.1996).
 
 
 70
 The full impact of Albright on § 1983 malicious prosecution claims is a matter of first impression in our Court despite the fact that we have heard two appeals pertaining to such claims since Albright was decided in 1994. In that year we declined to entertain on appeal a § 1983 claim based on malicious prosecution because no such claim was advanced in the district court and accordingly we "[had] no occasion to consider what effect [Albright ] has on our circuit jurisprudence." Barna v. City of Perth Amboy, 42 F.3d 809, 812 n. 2 (3d Cir.1994). Two years later, Hilfirty v. Shipman, 91 F.3d 573 (3d Cir.1996), presented this Court with the issue of whether the grant of a nolle prosequi was conditional and thus failed to satisfy the "favorable termination" requirement for the appellant's § 1983 malicious prosecution action. Without citing or discussing Albright we restated the circuit's expansive pre Albright approach to § 1983 malicious prosecutions:
 
 
 71
 [I]n order to state a prima facie case for a section 1983 claim of malicious prosecution, the plaintiff must establish the elements of the common law tort as it has developed over time. In Pennsylvania, like most jurisdictions, a party bringing a malicious prosecution claim must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice.
 
 
 72
 Id. at 579 (citations omitted). The weight of authority is to the effect that after Albright malicious prosecution claims must be brought under the Fourth Amendment.
 
 
 73
 District courts within the Third Circuit have interpreted the impact of Albright on our § 1983 malicious prosecution jurisprudence and have come to different conclusions. In Brooks v. Carrion, 1996 WL 563897 (E.D.Pa. Sept.26, 1996), the court held that after Albright but before Hilfirty (between January 1994 and July 1996) malicious prosecution was not clearly established as a constitutional violation and consequently the state defendants there were entitled to qualified immunity for claims arising out of incidents occurring during that period. See also Trueman v. Lekberg, No. 97-1018, 1998 WL 181816 (E.D.Pa. April 16, 1998) (following Brooks to find existence of malicious prosecution action was unclear on May 27, 1994, the date of Trueman's arrest); Smith v. Holtz, 856 F.Supp. 227, 236 (M.D.Pa.1994) (implying that the existence of § 1983 malicious prosecution claims under the Fourth Amendment was an unresolved issue), aff'd, 87 F.3d 108 (3d Cir.1996), cert. denied, sub nom. Wambaugh v. Smith, --- U.S. ----, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996).
 
 
 74
 On the other hand, other district courts in this circuit, including the district court below, have found that malicious prosecution remains a clearly established constitutional violation after Albright. Some courts have concluded that such actions must now state a violation of the Fourth Amendment. See, e.g., Gallo v. City of Philadelphia, 975 F.Supp. 723, 726 (E.D.Pa.1997) (viewing plaintiff's claim as asserting a Fourth Amendment violation because "[t]here is no Fourteenth Amendment substantive due process right to be free from malicious prosecution. The Supreme Court has, however, not foreclosed the possibility that a malicious prosecution cause of action may be actionable under the Fourth Amendment in a § 1983 claim") (citations omitted); Torres, 966 F.Supp. at 1361 n.7 (finding that the constitutional tort of malicious prosecution survives Albright but that a deprivation of liberty cognizable under the Fourth Amendment, in addition to the elements of the common law tort, is now required). Another court has found that § 1983 malicious prosecution claims still exist without reaching the question of whether Albright's Fourth Amendment language controls. In Miller v. City of Philadelphia, 954 F.Supp. 1056, 1066 (E.D.Pa.1997), the court held that a social worker did not have qualified immunity from a § 1983 malicious prosecution claim arising out of the initiation of child custody proceedings because "without clear direction from the Third Circuit concerning the impact of Albright, malicious prosecution remains a valid claim under § 1983." The court in Miller disagreed with the holding in Brooks, finding that:
 
 
 75
 [I]n light of the Third Circuit's explicit holding in Lee, the implications of Albright are not apparent enough for this court to conclude that malicious prosecution was not a clearly established constitutional violation under § 1983 during the eighteen months prior to Hilfirty.
 
 
 76
 Id. See also Ferraira v. Mobil Oil Corp., 1994 WL 470280 at * 3-* 4 (E.D.Pa. Aug.19, 1994) (analyzing § 1983 malicious prosecution claim under Third Circuit's pre-Albright standards), aff'd, 68 F.3d 456, (3d Cir.1995). Yet another court held that "Albright was limited to the specific facts of that case" and declined to construe Albright as "determining that persons subject to excessive force after [an] arrest should bring claims under the Fourth and not the Fourteenth Amendment." Bieros v. Nicola, 860 F.Supp. 226, 231 (E.D.Pa.1994).
 
 
 77
 Prior to Albright it was clearly established in this circuit that maliciously prosecuting an innocent individual constituted a violation of that person's constitutional rights. Albright modified this principle in two respects: i) the source of the constitutional right is the Fourth Amendment rather than substantive due process under the Fourteenth Amendment, and ii) to prevail a plaintiff must establish a "seizure" in addition to the common law elements of a malicious prosecution claim. This Court has stated that it is the "general right" which must be clearly established. In a sex discrimination case we have stated that "Although there may not have been any precedents with precisely analogous facts ... a 'reasonable official would understand that what he is doing violates [plaintiff's] rights.' " Andrews v. City of Philadelphia, 895 F.2d 1469, 1479 (3d Cir.1990) (citation omitted). Similarly, a reasonable police officer both before and after Albright would understand that maliciously prosecuting an innocent person, thereby causing his imprisonment, violates a constitutional right.
 
 
 78
 In light of the foregoing the district court correctly held that after Albright was decided in January 1994, malicious prosecution claims under § 1983 were clearly established federal actions in this circuit, albeit under the Fourth Amendment. This conclusion is supported by a number of factors, including this circuit's "expansive" pre-Albright § 1983 malicious prosecution jurisprudence as stated in Lee, the unambiguous implication in Albright that § 1983 malicious prosecution claims may be asserted under the Fourth Amendment, this Court's express re-recognition in Hilfirty of the constitutional tort, and the fact that a majority of the other courts of appeals that have considered the issue, as well as a great number of district courts in this circuit, have similarly held that constitutional malicious prosecution claims survive Albright and that such claims must be brought under the Fourth Amendment. In light of these factors the district court correctly rejected the appellants' argument that in June 1994 the state of the law of constitutional malicious prosecution in the Third Circuit was so uncertain that a reasonable official in defendants' position could have thought that his actions would not give rise to a § 1983 claim.
 
 
 79
 For the reasons set forth above I dissent from the majority opinion.
 
 
 
 *
 Honorable Dickinson R. Debevoise, United States Senior District Judge for the District of New Jersey, sitting by designation
 
 
 [1]
 McLaughlin claims he observed Torres selling cocaine. For purposes of this appeal, the officers concede to Torres's version of the facts
 
 
 [2]
 The District Court found sufficient evidence to permit the inference that McLaughlin made false statements to the prosecutor who relied on these statements and initiated the prosecution. See Torres v. McLaughlin, 966 F.Supp. 1353, 1365-66 (E.D.Pa.1997)
 
 
 [3]
 The District Attorney has also moved to nolle pros 53 other cases in which McLaughlin was an essential witness
 
 
 [1]
 Chief Justice Rehnquist's plurality opinion was joined by Justices O'Connor, Scalia and Ginsburg, each of whom also wrote her/his own concurring opinion. Justice Souter wrote an opinion concurring in the judgment, as did Justice Kennedy, whose opinion was joined by Justice Thomas. Justices Stevens and Blackmun dissented
 
 
 [2]
 The Seventh Circuit Court of Appeals had ruled that prosecution without probable cause was a constitutional tort actionable under § 1983 only if accompanied by incarceration or loss of employment or other "palpable consequences," Albright v. Oliver, 975 F.2d 343, 347 (7th Cir.1992), because absent such an injury "state tort remedies should be adequate and the heavy weaponry of constitutional litigation can be left at rest." Id