

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-30-2003

# Walker v. Camden

Precedential or Non-Precedential: Non-Precedential

Docket 02-2442

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Walker v. Camden" (2003). *2003 Decisions.* Paper 835.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/835

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 02-2442

———

KEITH WALKER,
                                        Appellant
                v.

THE CITY OF CAMDEN;
*GWENDOLYN FAISON, MAYOR;
*DENNIS KILE, CITY ATTORNEY;


*(Pursuant to FRAP 43 (c))

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 00-cv-00366
District Judge:  The Honorable Joel A. Pisano

———

Argued January 10, 2003

———

Before: SCIRICA, BARRY, and SMITH, <u>Circuit Judges</u>

(Opinion Filed: January 30, 2003)

———


Mark B. Frost, Esquire (Argued)
Frost & Zeff
7 North Christopher Columbus Boulevard
Philadelphia, PA 19106

<u>Attorney for Appellant</u>

David E. Poplar, Esquire (Argued)

John C. Eastlack, Jr., Esquire
Poplar & Eastlack
215 Fries Mill Road
P.O. Box 8320
Turnersville, NJ 08012

<u>Attorneys for Appellees</u>

_____

OPINION

_____

BARRY, <u>Circuit Judge</u>

Because we write primarily for the parties and the District Court, we dispense with a full recitation of the underlying facts and invoke them only when it is necessary to our analysis. Suffice it to say that appellant Keith Walker filed a complaint against the City of Camden, its former mayor, and its former city attorney alleging violations of his constitutional rights which ultimately resulted in his termination. Following discovery, defendants filed a motion for summary judgment, which was granted, and Walker appealed. We have jurisdiction over his appeal under 28 U.S.C. § 1291. We will affirm in part and reverse in part, remanding for further proceedings in accordance with this opinion. Our review is plenary. <u>Torres v. McLaughlin,</u> 163 F.3d 169, 170 (3d Cir. 1998).

We deal with the reversal first. Walker argues, and we agree, that summary judgment was improvidently granted on his First Amendment/retaliation claim because the District Court improperly found that his speech, which was critical of the Milan administration for whom he worked, was unprotected. This finding was essentially based on

2

two fundamental misunderstandings the blame for which, we suggest, rests primarily on the shoulders of the parties. In a nutshell, the District Court appeared to believe that Walker's speech was public speech, when it was not, and appeared to believe, given the cases upon which it relied, that Walker was a high ranking official of the administration and, indeed, an alter ego of the Mayor, when he was not. Indeed, Walker was a temporary employee and but one of three Assistant Business Administrators whose access to the public was limited to the very occasional release of predetermined information at the behest of his supervisors. The briefs of the parties before us would have caused us to come to the same mistaken conclusions as the District Court, and only oral argument fleshed out what this case was <u>really</u> about – a case of purely private speech by an employee who was surely not in the position of a Mr. Johnson or a Mr. Sprague even if he had spoken publicly, which he did not.[1]

A public employee's retaliation claim is analyzed under a three-pronged test. <u>Latessa v. New Jersey Racing Com'n</u>, 113 F.3d 1313, 1319 (3d Cir. 1997); <u>Green v. Philadelphia Hous. Auth.</u>, 105 F.3d 882, 885 (3d Cir.1997). To ultimately prevail on such a claim, the plaintiff must demonstrate: 1) that he or she engaged in speech that is protected; 2) that his or her speech was a motivating factor in the alleged retaliatory act; and 3) that defendants cannot show by a preponderance of the evidence that, even in the absence of the protected speech, the adverse action at issue would have been taken. <u>Watters v. City of</u>

---

[1] <u>Sprague v. Fitzpatrick</u>, 546 F.2d 560 (3d Cir. 1976); <u>Johnson v. Yurick</u>, 156 F.Supp.2d 427 (D.N.J. 2001), aff'd 39 Fed.Appx. 742 (3d Cir. 2002).

3

Philadelphia, 55 F.3d 886, 892 (3d Cir.1995).

The threshold question, then, for the District Court was whether or not Walker's speech was protected, a question which, to be answered, must of necessity consider the tension that arises when a public employee's exercise of free speech is seen by his or her employer as undermining or subverting its legitimate goals and functioning. A public employee's free speech rights have repeatedly been recognized as being somewhat more conscripted in comparison with those of an ordinary citizen. See, e.g., Connick v. Myers, 461 U.S. 138, 143-46 (1983) (noting that "[w]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."). On the other hand, "[j]udicial vigilance is required to ensure that public employers do not use their authority to silence discourse on matters of public concern simply because they disagree with the content of the employee's speech." Watters, 55 F.3d at 891. Thus, while public employees do not wholly relinquish "the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest," government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968).

The initial query in a protected-speech analysis, then, is whether or not the speech relates to a matter of public concern or may be "'fairly considered as relating to any matter

4

of political, social, or other concern to the community.'" Swartzwelder v. McNeilly, 297 F.3d 228, 235 (3d Cir. 2002) (quoting Connick, 461 U.S. at 146).  If the speech is deemed to be of public concern, the court must then strike a "'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (quoting Connick, 461 U.S. at 142).  These constitute questions of law for the court.  Baldassare v. State of New Jersey, 250 F.3d 188, 194-95 (3d Cir. 2001).  The appropriate analysis must be informed by the time, place, and overall context of the speech, factoring in such considerations as "'whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'"  Swartzwelder, 297 F.3d at 235 (quoting Rankin v. McPherson, 483 U.S. 378, 388 (1987)).  The Supreme Court has described this balancing test as demanding "a fact-sensitive and deferential weighing of the government's legitimate interests." Board of County Comm'rs v. Umbehr, 518 U.S. 668, 677 (1996).

If the balance is struck in favor of the employee, the speech is protected; if it is struck in favor of the employer, it is not.  The District Court found that Walker's speech was unprotected and thus did not proceed to the final two prongs of the retaliation analysis. While conceding that "Walker's statements are clearly within the public interest," 31a, the Court found that the speech was nonetheless unprotected because the Milan

5

administration's interest in regulating his speech outweighed his interest in speaking:

> Camden has a strong interest in controlling Walker's speech. Walker was Camden's Assistant Business Administrator, as well as Camden's official spokesperson. As a result, he not only held a relatively high position within the city government, but was also Camden's official public mouthpiece. Therefore, it was a relevant consideration for the Mayor to want the person serving in that capacity to share views similar to his and certainly not have somebody in that position that openly criticizes the administration. The purpose of the city spokesperson is to speak in support of the city and the administration, rather, than speaking against it. The city cannot be required to employ a spokesperson, or any high level employee, who often challenges administration policies. Walker's speech was not protected speech, therefore summary judgment is appropriate.

(Id. at 32a).

As suggested above, despite both parties' repeated references, both before the District Court and on appeal, to Walker's "speaking out," and "speaking out publicly" and "openly" in criticism of the administration, there is utterly no evidence that he did so and the parties conceded at oral argument that he did not. Indeed, the only persons Walker spoke to about his concerns were his supervisors and other city officials – privately.

Because Walker's critical speech on issues of public concern was limited to in-house conversations primarily with his supervisors, that speech surely passes the balancing test and is protected. Indeed, appellees have not even suggested any legitimate interest in preventing the registration of internal complaints of commercial impropriety or corruption or racism such as Walker privately voiced here and there is no evidence of any impact on the administration's operations, much less any disruption, from his speech.

In light of our having found Walker's speech to be protected, we will remand this

6

case so that the District Court may reach the remaining two prongs of the Latessa/Green/ Pickering test that it did not reach given its determination that the speech was not protected.

We will affirm the grant of summary judgment as to Walker's due process and equal protection claims for the reasons substantially set forth in the District Court's opinion. (See 32a-37a).  Similarly, we will affirm the grant of summary judgment as to Walker's various claims of race -based discrimination.  The District Court found that the two isolated derogatory racial comments Walker during his tenure heard Milan make to refer to African-Americans did not amount to "actionable" direct evidence of discrimination – "although in poor taste and condemned by the Court, [those two comments] do not give rise to liability." (Id. at 40a).  We agree.  We note, however, that to the extent that Walker may have complained to his supervisors of those isolated remarks or complained of instances of race discrimination which he saw or of which he was told, it certainly appears that those complaints can find a home in his First Amendment/retaliation claim.  We also agree with the District Court that Walker, a temporary employee who failed to take and pass the requisite competitive exam for the Assistant Business Administrator position, did not show that he was "qualified" for the position for purposes of establishing a prima facie case of discrimination and that even if he had, there was little or no evidence that the legitimate, nondiscriminatory reasons proffered for his termination were a pretext and that the real reason was discrimination.  Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 2000).

One final note.  In light of the fact that summary judgment was granted on the federal

7

claims, the District Court declined to exercise supplemental jurisdiction over the state law claims. Because we are reversing in part the grant of summary judgment and remanding the First Amendment/retaliation claim to the District Court, we will also remand the state law claims.[2]

**Conclusion**

For the aforementioned reasons, we will affirm in part and reverse in part, and remand for further proceedings in accordance with this opinion.

---

[2]The order of the District Court states that it "refrains from exercising supplemental jurisdiction over counts eight and nine," 10a. According to the District Court's opinion, however, count eight is brought under 42 U.S.C. § 1988 and there appears to be state claims raised in counts five, six and seven. 21a. The parties have not graced us with a copy of the Complaint so we cannot parse this out.

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.



/s/ Maryanne Trump Barry
Circuit Judge