NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-1353
_____

NEDAL ELFAR,
                              Appellant

v.

TOWNSHIP OF HOLMDEL; MICHAEL SASSO;
MATTHEW MENOSKY; JOHN MIODUSZEWSKI
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-22-cv-05367)
District Judge: Honorable Robert Kirsch
_____

Argued: November 4, 2024

Before: KRAUSE, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed:  March 3, 2025)

Justin D. Santagata [Argued]
Cooper Levenson
1125 Atlantic Avenue
3rd Floor
Atlantic City, NJ 08401

    *Counsel for Appellant*

David A. Schwartz [Argued]
Schwartz & Posnock
99 Corbett Way

Suite 203
Eatontown, NJ 07724

    *Counsel for Appellees*

_____

OPINION[*]

_____

**SCIRICA**, *Circuit Judge*

    In this malicious prosecution and municipal liability action based on a series of trials in New Jersey state court, plaintiff-appellant Nedal Elfar challenges the District Court's orders granting defendants-appellees' motion to dismiss, denying Elfar's motion for partial summary judgment, and staying discovery. The court held Elfar failed to state a claim under 42 U.S.C. § 1983 because it determined his initial conviction was *not* vacated pending retrial, rendering any deprivations of liberty he suffered during retrial "post-conviction restrictions" rather than seizures under the Fourth Amendment. *Elfar v. Twp. of Holmdel*, No. 22-5367, 2024 WL 415691, at *8 (D.N.J. Feb. 5, 2024) ("[N]othing . . . suggests [Elfar's] municipal court conviction [was] vacated pending appeal . . . . [T]he Court finds that the restrictions imposed on [Elfar's] liberty *after* his conviction in municipal court cannot provide a basis for his malicious prosecution claim.").

    But the parties dispute whether Elfar's conviction was vacated pending his retrial, and one state court judge believed Elfar's initial conviction *had* been vacated. Because

---

    [*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

we construe the complaint in the light most favorable to Elfar under Federal Rule of Civil Procedure12(b)(6), and this case's procedural history is uniquely murky, we will assume his conviction was vacated pending retrial. Accordingly, Elfar has sufficiently pled a seizure—his deprivations of liberty suffered during retrial—and we will reverse the court's holding on that issue, vacate its order granting the motion to dismiss, and remand for further consideration of downstream issues, including whether Elfar sufficiently pled his claims' other elements. We will affirm the court's orders denying partial summary judgment and staying discovery.

## I.

Because we write principally for the parties, who are familiar with this case's factual and legal history, we will set forth only those facts necessary to our analysis.

In 2016, two police officers, defendants Matthew Menosky and Michael Sasso, stopped Elfar for minor traffic violations in Holmdel, New Jersey. The officers were equipped with an audio-video recording system. The officers quickly discovered marijuana in Elfar's vehicle upon a purported plain-view search and performed a field sobriety test, the outcome of which the parties dispute. After the test, the officers muted their recording system, a violation of municipal policy, to discuss probable cause for a potential arrest. They subsequently arrested Elfar for DWI and related offenses. Officers detained Elfar to process his charges, though Elfar contends he was held for "at least one hour" after officers issued his summons. App. 140–41.

Elfar was tried and convicted in Holmdel Municipal Court in February 2017, his license was suspended, and he was ordered to participate in a remedial course. Elfar filed

a *de novo* appeal to New Jersey's Superior Court, and, in March 2017, Elfar and the prosecutor's office entered a consent order partially restoring Elfar's driving privileges during the pendency of his appeal. The order permitted Elfar to drive "for business and family obligations" between 6:00 a.m. and 11:00 a.m. and between 5:00 p.m. and 10:00 p.m. App. 803–04.[1] The order remained in place when, in October 2017, the parties agreed to remand the case to municipal court for retrial in light of newly discovered evidence. The case was remanded, and Elfar motioned for a new trial under the parties' agreement. While Elfar's motion was pending, the prosecutor informed Elfar that Holmdel's former police chief—defendant John Mioduszewski—had spoken to the judge *ex parte* and wanted the case to "run it's [sic] course" even though the prosecutor "would love to resolve" the charges. App. 129.

The Municipal Court granted Elfar's motion for a new trial under N.J. Mun. Ct. R. 7:10-1, though the record does not contain an order independently vacating Elfar's conviction. A new judge was assigned for retrial, Elfar was again convicted in December 2018, and his original sentence was reimposed in place of his consent order. Elfar again *de novo* appealed to New Jersey's Superior Court, which ultimately acquitted Elfar of all charges in August 2022. The Superior Court held, *inter alia*, Elfar's arresting officers acted without probable cause, the plain view doctrine did not support the warrantless search, and no reasonable officer could have concluded Elfar was impaired the night of

---

[1] Contrary to the language of the consent order itself, Elfar's complaint contends he was permitted to drive for "limited reasons" between 9:00 am. and 5:00 p.m. App. 128. Either way, Elfar pleads the State restricted his ability to drive.

his arrest.  Reflecting on Elfar's second municipal trial, which had adopted legal rulings made in the first, the Superior Court opined, "It is not clear how [Elfar] could be granted a new trial and be bound by the legal rulings made in a trial that was vacated and made by a Judge who recused herself."  App. 171.

Elfar filed this action in 2022, which consists of § 1983 and common law malicious prosecution claims against his arresting officers and the former police chief and a municipal liability claim against defendant Township of Holmdel ("Holmdel").  The District Court stayed discovery pending dispositive motions and subsequently: (1) granted appellees' motion to dismiss, reasoning Elfar failed to plausibly plead (a) the requisite seizure for malicious prosecution and (b) a basis for municipal liability, and (2) denied Elfar's motion for partial summary judgment against Holmdel, which sought to use non-mutual offensive issue preclusion to bar Holmdel from contesting facts established in Elfar's criminal appeal.  As relevant to Elfar's malicious prosecution claim, the court reasoned the necessary "seizure" for such a claim cannot consist solely of "having to attend one's own trial" and "does not include *post*-conviction [restrictions]." *Elfar*, 2024 WL 415691, at *7.

## II.[2]

On appeal, Elfar challenges the court's orders dismissing his complaint, denying his motion for partial summary judgment, and staying discovery.  Elfar contends the

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367, and we have jurisdiction under 28 U.S.C. § 1291.

5

court erred in holding (1) Elfar's mandatory appearances in his first trial were not a "seizure" sufficient to support a claim for malicious prosecution, (2) Elfar's driving restrictions, which remained in effect during his retrial, were not a seizure as they occurred before his first conviction was purportedly vacated, and (3) Holmdel was not in privity with Elfar's municipal prosecutor, barring the court from applying non-mutual offensive issue preclusion. Elfar also contends the court abused its discretion in staying discovery.

We review the court's order granting the motion to dismiss *de novo*. *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016). Under Rule 12(b)(6), we must deny a motion to dismiss where a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). We must "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

While we review *de novo* the court's order denying Elfar's motion for partial summary judgment, *see Canada v. Samuel Grossi & Sons*, 49 F.4th 340, 345 (3d Cir. 2022), we review its decision not to apply non-mutual offensive issue preclusion for abuse of discretion, *see Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244,

248–49 (3d Cir. 2006).

We review the court's stay of discovery for abuse of discretion. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001).

III.

This case largely turns on whether Elfar has pled a seizure under the Fourth Amendment, a requisite element of his § 1983 malicious prosecution claim. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *see also Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) ("To succeed on such a claim, a plaintiff must show that a government official charged him without probable cause, *leading to an unreasonable seizure of his person*." (emphasis added) (citation omitted)). If Elfar has pled a seizure, the court erred in (1) dismissing his § 1983 malicious prosecution claim without considering the claim's other elements, (2) holding Elfar's malicious prosecution claim could not serve as the basis for his municipal liability claim, and (3) declining to exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim as it had dismissed all federal claims. Because Elfar sufficiently pled a seizure, we will vacate and remand for reconsideration of these downstream issues. We will affirm the court's other orders.

A.

To prevail on a malicious prosecution claim under § 1983, a plaintiff must separately establish: "(1) the defendant[s] initiated a criminal proceeding; (2) the criminal proceeding ended in [his] favor; (3) the defendant[s] initiated the proceeding without probable cause; (4) the defendant[s] acted maliciously or for a purpose other than

7

bringing the plaintiff to justice; and (5) [he] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014)). Because the District Court held Elfar failed to plead a seizure and, accordingly, did not reach malicious prosecution's other elements, the operative question on appeal is whether Elfar was seized within the meaning of the Fourth Amendment. Elfar identifies two potential seizures: (1) his license restrictions and mandatory appearances during his retrial, and (2) his post-arrest, one-hour detention and mandatory appearances during his first trial. An embedded issue within Elfar's first potential seizure is whether deprivations of liberty suffered during retrial may constitute a seizure.

A seizure generally must occur before conviction. *See DiBella*, 407 F.3d at 603 ("[T]he Fourth Amendment does not extend beyond the period of *pretrial* restrictions." (emphasis added)); *Donahue v. Gavin*, 280 F.3d 371, 381 (3d Cir. 2002) ("[C]onsistent with our language in Johnstone, we conclude that post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment . . . ." (citation omitted)); *Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998) ("We conclude that the limits of Fourth Amendment protection relate to the boundary between arrest and *pretrial* detention." (emphasis added)). Two recent Supreme Court cases leave that requirement undisturbed. *See Manuel v. City of Joliet*, 580 U.S. 357, 369 n.8 (2017) ("[O]nce a trial has occurred, the Fourth Amendment drops out . . . ."); *Chiaverini*, 602 U.S. at 562–64 ("Under [the Fourth Amendment], a *pretrial* detention . . . must be based on probable cause. . . . [A]

8

Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a *seizure*—like the arrest and three-day detention here." (emphasis added)).

But deprivations of liberty suffered during retrial, *after a defendant's conviction has been vacated*, also qualify as seizures under the Fourth Amendment. That is, once a defendant's conviction is vacated and the government elects to proceed with a new trial, the conviction has become a legal nullity, and the defendant necessarily returns to a *pretrial* status. *See Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) ("Even a conviction that has been merely vacated, . . . with the matter remanded for a new trial, . . . is 'null and void, and the parties are left in the same situation as if no trial had ever taken place.'" (quoting *United States v. Ayres*, 76 U.S. (9 Wall.) 608, 610 (1869))). Restrictions imposed after a conviction is vacated and while retrial is pending are accordingly "pretrial deprivations of liberty" subject to the principles animating *Manuel*: "the Framers drafted the Fourth Amendment to address the matter of *pretrial* deprivations of liberty, and the Amendment thus provides standards and procedures for the detention of suspects *pending trial*." 580 U.S. at 369 n.8 (citations omitted) (internal quotation marks omitted); *see also Torres*, 163 F.3d at 174 ("[T]he Framers of the Constitution drafted the Fourth Amendment to quell *pretrial* deprivations of liberty.").

Accordingly, Elfar's deprivations of liberty suffered during retrial might qualify as a seizure *if his conviction was vacated*. But it is unclear whether Elfar's conviction was vacated pending his retrial. On one hand, it appears no order was entered independently vacating his conviction before retrial. On the other hand, the local rule under which

9

Elfar's retrial was granted provides that an order granting a retrial "may vacate the judgment if already entered," N.J. Mun. Ct. R. 7:10-1, and the New Jersey Superior Court judge who ultimately exonerated Elfar seemingly believed his conviction had been vacated pending retrial, *see* App. 171 ("It is not clear how [Elfar] could be granted a new trial and be bound by the legal rulings made in a trial that was *vacated* and made by a Judge who recused herself." (emphasis added)). In sum, while no independent legal ruling vacated Elfar's conviction, the order granting Elfar's retrial *may* have had that effect. Because we must construe the complaint in the light most favorable to the non-movant on a motion to dismiss, and the status of Elfar's conviction pending retrial is murky, we will presume Elfar's conviction *was* vacated, rendering his deprivations of liberty suffered during retrial a potential seizure.[3]

Though not all pretrial deprivations of liberty rise to a seizure under the Fourth Amendment, Elfar's mandatory appearances combined with his driving restrictions, as pleaded, rise to a seizure. Merely having to attend one's trial, without more, is not a seizure. *DiBella*, 407 F.3d at 603; *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (holding it was a "close question" whether the following restrictions, together, amounted to a seizure: "[Plaintiff] had to post a $10,000 bond, he had to attend

---

[3] Our inference that Elfar's conviction was vacated pending his retrial depends on our deferential Rule 12(b)(6) review and this case's uniquely murky procedural history. We make no holding on whether, as a matter of New Jersey state law, an order granting a retrial under N.J. Mun. Ct. R. 7:10-1 necessarily vacates a conviction in every case, or on whether New Jersey's *de novo* appeal procedure has any bearing on the status of an appealed conviction.

10

all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania"). But, where a defendant is both compelled to attend their trial *and* suffers onerous travel restrictions, they are seized within the meaning of the Fourth Amendment. *See Black*, 835 F.3d at 362–63, 368 (3d Cir. 2016) (finding pretrial restrictions rose to a seizure where a plaintiff "was released on $50,000 unsecured bail" and was compelled to fly from her home in "California to Pennsylvania for twelve out of fourteen pre-trial conferences, . . . . presumably at great expense"). Here, Elfar pleads he was required to appear in court no less than seventeen times and that his driving restrictions "up-ended" his life and resulted in threats of arrest despite his compliance with the restrictions. App. 137. Together, these mandatory appearances and onerous travel restrictions rise to a seizure under *Black*, *Gallo*, and *DiBella*.[4]

Because Elfar has adequately pled a seizure under the Fourth Amendment, the District Court erred in declining to consider whether he satisfied malicious prosecution's other elements, including whether defendants initiated the criminal proceeding against Elfar without probable cause. Accordingly, the court also erred in holding Elfar's malicious prosecution claim could not serve as the basis for his municipal liability claim and in declining to exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim. Rather than reach these issues, we will remand for the court to

---

[4] Because we hold Elfar's mandatory appearances and driving restrictions, as pleaded, rise to a seizure, we need not evaluate whether his deprivations of liberty suffered during his first trial independently constitute a seizure.

11

consider (1) whether Elfar has sufficiently pled malicious prosecution's other elements, (2) if he has, whether malicious prosecution might serve as the basis for his municipal liability claim, and (3) based on the answers to these questions, whether the court should exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim.

B.

The District Court properly denied Elfar's motion for partial summary judgment against Holmdel based on its decision not to apply non-mutual offensive issue preclusion, also known as collateral estoppel. When considering whether to give preclusive effect to a state court judgment, federal courts look to the adjudicating state's law. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). In New Jersey, in addition to fairness considerations, "there are five identified conditions precedent to the application of the collateral estoppel doctrine: . . . (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *N.J. Div. of Youth & Fam. Servs. v. R.D.*, 23 A.3d 352, 368 (N.J. 2011) (internal quotation marks omitted) (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006)).

The District Court held condition five was not satisfied as Holmdel was not in privity with the municipal prosecutor in Elfar's prior criminal proceeding—*i.e.*, the prosecutor was not Holmdel's "virtual representative," allowing Holmdel to "control" the

12

litigation. *Allen v. V&A Bros.*, 26 A.3d 430, 445 (N.J. 2011) (citation omitted). This holding was not an abuse of discretion. As the court reasonably concluded, although Holmdel employed the municipal prosecutor, she was not Holmdel's virtual representative. Her client was the State of New Jersey, *see Matter of Segal*, 617 A.2d 238, 244 (N.J. 1992) ("[T]he State is the municipal prosecutor's client . . . ."), and New Jersey had divergent interests from Holmdel as a potential § 1983 claim posed no danger to New Jersey given its state immunity, *see Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a *State* for alleged deprivations of civil liberties." (emphasis added)). The same is true for the county prosecutor who prosecuted the case against Elfar on appeal. *See Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996) ("When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State."). Accordingly, we will affirm the court's denial of Elfar's motion for partial summary judgment.

## C.

The District Court did not abuse its discretion in staying discovery pending the resolution of dispositive motions. District courts retain broad discretion to manage the docket and resolve discovery disputes. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). And courts may reasonably stay discovery pending a motion to dismiss where the motion may render discovery futile. *See Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under

13

Rule 8, he is not entitled to discovery, cabined or otherwise."). Because the court stayed discovery pending dispositive motions to conserve judicial resources, it acted within its discretion, and we will affirm these orders.

## IV.

For the foregoing reasons, we will vacate the court's order granting the motion to dismiss and remand for further consideration on whether (1) Elfar has sufficiently pled malicious prosecution's non-seizure elements under § 1983, (2) malicious prosecution might serve as a basis for municipal liability, and (3) the court should exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim. We will affirm the court's orders denying the motion for partial summary judgment and staying discovery.

**Krause**, *Circuit Judge*, concurring.

I agree with my colleagues that the District Court erred in dismissing the complaint, given that it sufficiently pleads a pretrial deprivation of liberty that constitutes a "seizure" for purposes of a Fourth Amendment malicious-prosecution claim. I write separately, however, to bring clarity to two issues implicated here, both of which have clear resolutions that flow neatly from our existing case law and bedrock constitutional principles.

First, because "the Fourth Amendment does not extend beyond the period of *pretrial restrictions*," *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (emphasis added), deprivations of liberty suffered while awaiting appeal cannot satisfy the "seizure" element of a Fourth Amendment malicious-prosecution claim. Whether the appellate court's standard of review is *de novo*, as was the case here, or more deferential, an appeal is an appeal, so a restriction imposed on a defendant while his appeal is pending is by definition a "post-conviction" restriction and thus "cannot be a seizure within the meaning of the Fourth Amendment." *Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998); *Donahue v. Gavin*, 280 F.3d 371, 381 (3d Cir. 2002) (same).

Second, when a new trial is granted in a criminal case, the initial conviction is vacated as a matter of law, regardless of whether the order explicitly says so. That is because the Double Jeopardy Clause explicitly prohibits the government from retrying someone for a crime if their initial conviction remains intact, *see* U.S. Const. amend. V ("No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . ."), making it "elementary in our law that a person can be tried a second time for

1

an offense" only "when his prior conviction for that same offense has been set aside," *Burks v. United States*, 437 U.S. 1, 9 (1978) (quoting *Forman v. United States*, 361 U.S. 416, 425 (1960)); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (explaining that the Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction"). The necessary corollary, long recognized by the Supreme Court, is that an "order granting [a] new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause." *United States v. Ayres*, 76 U.S. 608, 610 (1869). We, too, have considered it "settled that the granting of a new trial has the effect of vacating an existing judgment in the cause." *Allegheny Cnty. v. Maryland Cas. Co.*, 132 F.2d 894, 896 (3d Cir. 1943). Thus, for purposes of a Fourth Amendment malicious-prosecution claim, the grant of a new trial wipes the slate clean, effectively resetting the clock to the pretrial stage.

What that means here is that Elfar could not have been forced to stand for a second trial, consistent with the Double Jeopardy Clause, if he simultaneously remained convicted of the offenses for which he was being retried. *See* U.S. Const. amend. V. Nor could he have been convicted and sentenced at his retrial unless his initial conviction and sentence were annulled. *See Burks*, 437 U.S. at 9; *Pearce*, 395 U.S. at 717. Thus, Elfar's first conviction was vacated as a matter of basic constitutional law once his motion for a new trial was granted, *see Ayres*, 76 U.S. at 610; *Allegheny Cnty.*, 132 F.2d at 896, meaning that the deprivations of liberty he suffered while his retrial was pending were necessarily pretrial and, hence, cognizable seizures for purposes of his malicious-

2

prosecution claim.

With these understandings and the guidance they may provide on remand, I join the majority opinion.